Janet L. SELCHERT, Plaintiff-Respondent, v. Glen E. SELCHERT, Defendant-Appellant.

Court of Appeals

*No. 77–784. Submitted on briefs January 23, 1979.—*
*Decided March 7, 1979.*
(Also reported in 280 N.W.2d 293.)

For the defendant-appellant the cause was submitted on the briefs of *Walter R. Nicolai* of Milwaukee, Wisconsin.

For the plaintiff-respondent the cause was submitted on the briefs of *Frederick A. Moegenburg* of Milwaukee, Wisconsin.

Before Decker, C. J., Cannon, J., and Robert W. Hansen, Reserve Judge.

CANNON, J. This is an appeal by the defendant in a contested divorce action. Mrs. Selchert was granted a divorce on February 16, 1978, on the basis of cruel and inhuman treatment by Mr. Selchert, and the property of the parties was divided pursuant to that divorce judg-

ment. The issues on appeal involve the division of property between the parties, and the awarding of attorney's fees. The custody of the 11-year-old daughter of the parties, which was contested during the divorce proceedings and awarded to Mrs. Selchert, is not at issue on appeal.

At the time of the divorce, Mr. Selchert was 51 years old, and worked at A. O. Smith Corporation as a tool and die maker. His take-home pay was approximately $1,050 per month. Mrs. Selchert was 45 years old, and had apparently been a housewife during most of the marriage of 26 years. The parties had six children, only one of whom was a minor at the time of the divorce judgment.

In the divorce judgment, the trial court expressed a desire to divide the marital property "to approximate as close as possible a 50 per cent division to each of the parties." Mrs. Selchert was awarded property valued at $91,795, which consisted of most of the non-pension related assets of the parties' estate; Mr. Selchert received $96,000, consisting predominantly of his retirement fund.[1] In addition, Mr. Selchert was ordered to pay $4,000 in contribution towards his wife's attorney fees.

[1] The distribution of assets between the parties was as follows:

| Asset | Ms. Selchert |
| --- | --- |
| Homestead | $31,500.00 |
| U. S. savings bonds | $25,050.00 |
| First Federal Savings and Loan account | $26,200.00 |
| National Investors stock | $ 2,350.00 |
| Koehring stock | $ 956.00 |
| Prudential stock | $ 994.00 |
| A. O. Smith stock | $ 2,045.00 |
| Household furnishings | $ 2,400.00 |
| 1967 Plymouth | $ 300.00 |

| Asset | Mr. Selchert |
| --- | --- |
| 1973 Plymouth | $ 1,000.00 |
| Pension fund of A. O. Smith | $75,198.00 |
| Employee's benefit account A. O. Smith Corp. | $ 5,500.00 |
| Lot in Florida | $ 4,000.00 |
| A. O. Smith credit union savings account | $10,000.00 |

Mr. Selchert raises a number of issues on appeal. We reverse on two of the issues; sustain the trial court's rulings on the remaining issues; remand to the trial court for a reevaluation of the worth of Mr. Selchert's pension fund and for findings regarding the award of attorney's fees to Mrs. Selchert.

## PENSION FUND

The paramount issue on appeal involves the proper evaluation of Mr. Selchert's pension fund. Mr. Selchert's pension retirement fund, in which he had a 100 percent vested interest, was created by his employer, A. O. Smith Corporation. The fund had no cash surrender value. Mr. Selchert did not pay any money into the fund; the plan was supported entirely by contributions from A. O. Smith Corporation. The plan would pay $625 per month upon Mr. Selchert's retirement[2] until he became 62 years old. At that point, payments would be reduced to $327.97 per month for life, supplemented by Social Security. The fund would cease performance upon Mr. Selchert's death, with no payments made to heirs or spouse. No payments would be made until he retired.

An expert witness, Carl Vredenbregt, was called by Mrs. Selchert to testify regarding the value of the fund.[3] Vredenbregt stated that it would cost $75,198 to privately purchase a plan comparable to the pension fund Mr. Selchert possessed at A. O. Smith, *i.e.*, one that would

---

[2] Mr. Selchert was eligible to retire at any time and receive the pension benefits.

[3] Vredenbregt graduated from the University of Wisconsin in 1953. He worked as an agent for the Wisconsin Life Insurance Company from 1955 to 1969, and thereafter worked for the Manufacturers Life Insurance Company. He testified to extensive experience in life insurance sales, estate and annuity planning, pension plans and tax counseling.

pay $625 per month from age 51 to 62, and $372.97 per month for life thereafter. Vredenbregt stated, however, that the amounts paid out under the privately purchased annuity plan would not be taxed until the total of the payments surpassed the amount paid for the annuity, *i.e.,* $75,198. However, Mr. Selchert, as a noncontributing beneficiary of the A. O. Smith plan, would pay income taxes on all payments he received under the plan.

Mr. Selchert's witness, Alan Bachman, was the assistant administrator of the employee benefits department at A. O. Smith. He testified that the plan "isn't worth anything today," since it paid nothing until Mr. Selchert retired. Throughout most of the proceedings, Mr. Selchert maintained the position that the plan was worth nothing, and therefore, should not be considered in dividing up the marital estate. The trial court valued the retirement fund at $75,190 and awarded it to Mr. Selchert.

The division of property in a divorce action

[i]s within the sound discretion of the trial court and . . . the division will not be disturbed unless an abuse of discretion is shown. An abuse of discretion arises when the trial court has failed to consider proper factors, has made a mistake or error with respect to the facts upon which the division was made, or when the division itself was, under the circumstances, either excessive or inadequate. *Wilberscheid v. Wilberscheid,* 77 Wis.2d 40, 44, 252 N.W.2d 76 (1977).

On appeal, the parties agree that it would be an abuse of discretion for the trial court to not consider Mr. Selchert's interest in the pension plan in dividing the property. *See Schafer v. Schafer,* 3 Wis.2d 166, 170, 87 N.W. 2d 803 (1958);[4] *Leighton v. Leighton,* 81 Wis.2d 620,

[4] *See* sec. 247.255(9), Stats., which codifies *Schafer* by recognizing that pension benefits, whether vested or unvested, should be considered by the trial court in distributing the marital property.

633, 261 N.W.2d 457 (1978). The only disagreement concerns the actual monetary value placed on the fund by the trial court.

We hold that the value placed upon the pension fund by the trial court is excessive. We base our holding on two important factors:

First, the trial court found the value of the pension fund to be equivalent to the purchase price of the annuity about which Mrs. Selchert's expert, Mr. Vredenbregt, testified. The value of the annuity was based upon a 51-year old man receiving $625 per month from age 51 to 62, and receiving $372.97 per month from age 62 until his death. However, the A. O. Smith pension plan provided that Mr. Selchert would receive no payments until he actually retired. Mr. Selchert testified that he had no intention of retiring until age 65.[5] Therefore, unless Mr. Selchert retired at age 51, the value of the pension plan would be worth considerably less than an annuity which would begin payments immediately at age 51. Only if Mr. Selchert retired at age 51 could he realize the full value placed upon his pension by the court. As stated in *Bloomer v. Bloomer*, 84 Wis.2d 124, 131 n. 4, 267 N.W.2d 235 (1978):

Unlike the situation in the *Kronforst* case, there is no indication in the present record that Herbert has any intention of retiring early. In *Pinkowski v. Pinkowski*, 67 Wis.2d 176, 226 N.W.2d 518 (1975), we stated that the husband should not be forced to retire early in order to realize the lump-sum retirement benefit.

In *Schafer, supra* at 171, the court, in attempting to place a value on a retirement fund, determined that if the

---

[5] We note in passing that Mr. Bachman testified that Mr. Selchert had worked out a retirement arrangement with A. O. Smith for June, 1976. This was later cancelled, apparently by Mr. Selchert. (R. 369).

husband retired immediately, the fund would be worth $29,000. However, the court noted: "This value of $29,-000 may be too high because apparently Mr. Schafer has no present intention of retiring."

Secondly, if a private annuity plan was purchased by an individual for $75,198, the recipient would pay taxes on the monthly payments only when the total amount received surpassed the cost of $75,198. Anything less than this amount would be considered, for income tax purposes, merely as a non-taxable return of principal. However, Mr. Selchert's plan was non-contributory; therefore, under current tax law, he would be required to pay taxes on every payment received from the company. All payments would be 100% taxable. If each payment would be taxed when received at approximately 10–20%, which is reasonable speculation, the present value of the pension would be considerably less than the $75,198 amount placed upon it by the trial court when compared to the approximately $75,000 worth of tax free property awarded to Mrs. Selchert to offset the award of the pension to her husband. This consideration would appear to affect the trial court's desire to divide the property on a 50/50 basis.[6]

Therefore, we find it necessary to remand this case to the trial court for a reevaluation of Mr. Selchert's pension plan. After the reevaluation, it probably will be necessary for the trial court to make a new overall division of the marital assets of the parties. Any new distribution is, of course, in the discretion of the trial court.

---

[6] Previous Wisconsin Supreme Court cases have directed the trial court to consider tax consequences in its division of marital property. For example, see, *Wahl v. Wahl*, 39 Wis.2d 510, 524, 159 N.W.2d 651 (1968). This position has been codified in sec. 247.255(10), Stats. which states that "[t]he tax consequences to each party" should be a consideration in dividing marital property.

Although it is relatively simple to conclude that the value placed on Mr. Selchert's pension plan was too high, it is much more difficult to construct proper guidelines for valuing a pension plan. Retirement and pension plans are rarely similar; there are differences in whether the plan is contributory or non-contributory, whether it is vested or unvested, whether it is affected by early retirement or discharge, whether it pays to beneficiaries upon the primary insured's death, whether its value is affected by tax considerations, etc.

The most thorough discussion of the problem by the Wisconsin courts is contained in the recent case of *Bloomer v. Bloomer*. In *Bloomer,* supra at 135–36, the supreme court suggested three methods determining a value for a pension plan. By the first method, the trial court could consider the amount of the husband's contributions to the fund, and divide this amount accordingly. In this case the husband made no contribution to the fund; it was entirely supported by his company. Therefore, this method would not appear appropriate for this situation.

Secondly, "the trial court could attempt to calculate the present value of [Mr. Selchert's] retirement benefits when they vest under the plan." Although Mr. Selchert's interest in his plan is vested, the extent of his interest cannot be exactly determined until he actually retires. Since Mr. Selchert could retire any time during the next fourteen years, and according to new federal law would probably not be required to retire even at age 65, any value placed upon the pension fund would be suspect.

Finally, the trial court could use a method widely employed in other states, whereby the trial court determines what percentage of the marital property each spouse is to receive, and then divides payments from the pension plan accordingly. Under this approach it is unnecessary

to make any determination as to the value of the pension fund. The only consideration is the appropriate percentage of the marital property to which each spouse is entitled. In this case, the trial court determined that the property should be divided on a 50/50 basis, and that percentage is not challenged by either party. Therefore, according to the third method, all the assets of the parties, except the pension, would be divided according to the established percentage. When the beneficiary spouse then opts to receive payments under the pension plan, the non-covered spouse would be entitled to her established percentage of those payments. In this case, when Mr. Selchert begins to receive his pension benefits, Mrs. Selchert would be entitled to 50% of them. (We assume, based upon the record, that the amount of the payments Mr. Selchert is entitled to will not be altered by any additional years he works at A. O. Smith.) Any risk associated with the fund, such that Mr. Selchert might die before receiving any benefits, and any income tax complications of the pension fund, would be by this method apportioned equally between the parties.[7] This method

---

[7] This method has been used in community property states. The California Supreme Court in *In re Marriage of Brown*, 15 Cal.3rd 838, 848, 126 Cal. Rptr. 633, 639, 544 P.2d 561, 567 (1976), noted:

In dividing nonvested pension rights as community property the court must take account of the possibility that death or termination of employment may destroy those rights before they mature. In some cases the trial court may be able to evaluate this risk in determining the present value of those rights. But if the court concludes that because of uncertainties affecting the vesting or maturation of the pension that it should not attempt to divide the present value of pension rights, it can instead award each spouse an appropriate portion of each pension payment as it is paid. This method of dividing the community interest in the pension renders it unnecessary for the court to compute the present value of the pension rights, and divides equally the risk that the pension will fail to vest. [Citations omitted.]

may be particularly appropriate where the present value of a pension fund is very difficult or impossible to assess.[8] There, of course, may be other alternative methods of valuation the trial court may wish to utilize in placing a value on this particular pension fund.

We reverse and remand to the trial court with instructions to recompute the value of the pension fund in light of this opinion.[9]

## ASSET VALUATION

Mr. Selchert contends that the trial court improperly valued the worth of a plot of land in Florida and the amount of money in a credit union account. We disagree.

The parties owned a lot in Florida at the time of the divorce, which the trial court valued at $4,000. Mr. Selchert had testified that he "believed" the land was worthless, but on his financial declaration filed with the court he valued the property at $4,000. His argument regarding this asset is spurious.

---

[8] Obviously, the third method has the drawback that it would require a division of marital property at some time in the future and would continue at every pension paycheck until Mr. Selchert's death.

[9] Although we reverse the trial court's valuation, we note that, except for Mr. Bachman, who testified that the plan was worth nothing until retirement, Mr. Selchert did not present any expert witness to substantiate a value for the pension plan. The trial court was bound between Mrs. Selchert's deceptively erroneous comparison of the pension plan to a private annuity, and Mr. Selchert's position that the pension plan either did not have to be considered in the division of the mutual estate or that the plan was worth nothing. On appeal Mr. Selchert suggests a division of the pension plan, which assumes that Mr. Selchert will not retire until age 65. However, it is just as speculative to assume Mr. Selchert will retire at 65 as it is to assume he will retire at age 51. We also note that judgment in this case was rendered prior to the publication of the *Bloomer* case, upon which this opinion relies in part.

When the divorce action began, Mr. Selchert maintained an account with the A. O. Smith credit union of approximately $10,000. At the time of the trial only $1,500 remained in the account. Although Mr. Selchert's testimony was unclear due at least in part to inadequate recordkeeping, it appears that $2,400 was withdrawn from the account to pay attorney fees mainly for himself but partially for Mrs. Selchert, and "maybe a couple thousand dollars" was spent improving Mr. Selchert's mother's home. An undetermined amount was spent for Mr. Selchert's personal expenses, including medical expenses, furnishing the apartment he moved into after he left Mrs. Selchert, and other living expenses.[10] Additional expenses included an appraisal fee for the house, real estate taxes on his home of approximately $1,700 for two years, and support money for his wife.

The trial court, after hearing testimony, found that the defendant "withdrew various sums of money for his own purposes" from the account after the divorce action was commenced, and therefore valued the account at the full $10,000. The determination of the trier of fact in this instance is entitled to great weight. Due to the uncertain nature of the expenditures we hold that the trial court, in valuing the credit union account at $10,000, properly exercised its discretion.

Mr. Selchert also challenges the award of $300 per month to Mrs. Selchert for support for the 11-year old daughter of the parties, since "Mrs. Selchert only asked for $225."[11] The award of support, like the division of

[10] This situation was apparently exacerbated by Mr. Selchert taking a leave of absence from work from April to October, 1977, and Mrs. Selchert quitting her job when the divorce proceedings were begun.

[11] In the proposed findings of fact and conclusions of law prepared by the parties, Mrs. Selchert requested $300 per month support; Mr. Selchert proposed $130 per month.

property, is within the discretion of the trial court, and will be upheld unless either "the amount of an award is clearly excessive or inadequate," or the trial court abused its discretion. *Johnson v. Johnson*, 78 Wis.2d 137, 143–44, 254 N.W.2d 198 (1977) ; *Bussewitz v. Bussewitz*, 75 Wis. 2d 78, 89–90, 248 N.W.2d 417 (1977). While the trial court should have set forth its reasons for awarding $300 per month support, *see Lacey v. Lacey*, 45 Wis.2d 378, 389, 173 N.W.2d 142 (1970), we hold that $300 per month is not an excessive support award for an 11-year-old child in this circumstance, and that the trial court ruled within its discretion in making this award.

## MOTHER/DAUGHTER INTEREST ACCOUNTS

Mrs. Selchert and her mother were co-owners of two savings accounts containing approximately $18,000. Mrs. Selchert testified they were "convenience" accounts, that the money in the accounts was deposited entirely by her mother, that Mrs. Selchert never withdrew any money from the account, and that Mrs. Selchert's name was removed from the account after the divorce action was commenced. On the basis of this uncontroverted testimony, we hold the trial court was correct in ruling that the money in the account was not the property of the parties to the divorce action, and accordingly should not have been subject to division by the trial court.

Mr. Selchert also requested the trial court, and requests this court, to consider Mrs. Selchert's contingent interest in her 69-year-old mother's estate in the division of the property. Section 247.255, Stats. provides that in dividing marital property: "Any property inherited by either party prior to or during the course of the marriage shall remain the property of such party and may

not be subject to a property division under this section. . . ." By expressly excluding inherited property received before or during the marriage from the division of property, it is untenable to argue that the legislature intended that a contingent interest in property inherited after the dissolution of the marriage should be part of the marital property. In addition, Mrs. Selchert's interest in her mother's estate is too remote for consideration. At any time before her death, Mrs. Selchert's mother could remove Mrs. Selchert as a beneficiary under the will. Mrs. Selchert could also precede her mother in death. Accordingly, the trial court was correct in refusing to consider Mrs. Selchert's contingent interest in her mother's estate in dividing the marital estate.

## ATTORNEY'S FEES

The court ordered Mr. Selchert to pay $4,000 towards his wife's attorney fees. However, the trial court made no finding that Mrs. Selchert needed the funds, nor that Mr. Selchert was able to contribute the money. In addition, the court made no finding that the wife's attorney fees were reasonable.

Awarding attorney fees in a divorce action is within the discretion of the trial court, and will not be disallowed on appeal unless that discretion is abused. *Anderson v. Anderson,* 72 Wis.2d 631, 645, 242 N.W.2d 165 (1976). Generally, the need of one spouse for the contribution, and the ability of the other spouse to pay must be established before a contribution may be ordered. *Balaam v. Balaam,* 52 Wis.2d 20, 31, 187 N.W.2d 867 (1971), quoting *Dees v. Dees,* 41 Wis.2d 435, 164 N.W.2d 282 (1969). The supreme court has held that: "It is better practice in fixing contribution toward attorneys' fees to make a

specific finding of the former wife's need and the divorced husband's ability to pay. *Anderson, supra,* at 646. In addition,

[t]his court has indicated that in determining the amount of the divorced husband's contribution it is first necessary to establish the reasonableness of the total fee. [Cites omitted.] Such a determination is desirable not only to determine whether the fee is reasonable but to provide guidance in establishing what portion of that fee the divorced husband should reasonably be required to pay.

In the absence of some indication as to what the total fee is, this court is left to surmise as to whether a proper balance was struck between the former wife's needs and and the divorced husband's ability to pay. *Id.*

In *Anderson,* the court concluded that under the circumstance of that case, it could not reasonably review the award of attorney fees because of a lack of judicial findings, and thus reversed and remanded for appropriate findings.[12]

---

[12] In this case, we note that Mr. Selchert was awarded the following property:

| | |
|---|---|
| 1973 Plymouth | $ 1,000.00 |
| Pension fund of A. O. Smith | $75,198.00 |
| Employee's Benefit account A. O. Smith Corp. | $ 5,500.00 |
| Lot in Florida | $ 4,000.00 |
| A. O. Smith credit union Savings Account | $10,000.00 |
| | (Balance of $1,500.00 at time of trial) |

As we have noted, the pension fund is not payable until Mr. Selchert retires. Likewise, the employee benefit account is not payable until Mr. Selchert retires or otherwise terminates his employment. (R. 366). It is not disputed that only $1,500 remains in Mr. Selchert's savings account. The remaining property award involves a five-year old car and the Florida lot. With Mr. Selchert paying $300 per month support for his daughter, it is not at all obvious that he has the ability to pay $4,000 toward his wife's attorney, and certainly not in the 90-day period allowed by the trial court.

In a later case, *Vier v. Vier,* 62 Wis.2d 636, 639–40, 215 N.W.2d 432 (1974), the court held that even if a trial court failed to provide adequate reasons or findings for a division of property or any award of alimony, the court on appeal could sustain the judgment if it could come to a reasonable conclusion regarding the propriety of the division or award. In effect, *Vier* gives the appellate court the "option of reviewing the record *de novo.* . . ." *Leighton v. Leighton,* 81 Wis.2d 620, 628, 261 N.W.2d 457 (1978).

After reviewing the record, including the length of the proceedings and the number of appearances, we conclude that the $4,000 figure for Mrs. Selchert's attorney fees is not excessive. The reasonableness of the award is not challenged by Mr. Selchert. However, we cannot determine whether the trial court properly exercised its discretion in awarding the attorney fees, because it made none of the findings required by *Anderson.* In addition, the reevaluation of the pension plan will have such a bearing on the division of property that Mrs. Selchert's need for the award of attorney fees and Mr. Selchert's ability to pay the award might have to be redetermined by the trial court.

Therefore, we remand the case to the trial court with instructions to determine the value of the pension fund in light of this opinion, make the necessary findings regarding attorney fees as required by *Anderson,* and, if necessary reconsider the distribution of assets.

*By the Court.*—Affirmed in part, reversed in part and remanded.