## IN RE the MARRIAGE OF: Lushiang Wu CHEN, Petitioner-Respondent,

### v.

## Steve CHEN,† Respondent-Appellant.

Court of Appeals

*No. 87–0090. Submitted on briefs September 8, 1987.—Decided October 20, 1987.*

(Also reported in 416 N.W.2d 661.)

† Petition to review denied.

7

For respondent-appellant, there were briefs by *Terrence R. Spaeth* of *Herrick, Hart, Duchemin, Danielson & Guettinger, S.C.,* Eau Claire.

For petitioner-respondent, there was a brief by *Gary L. Bakke* of *Bakke, Norman & Schumacher, S.C.,* New Richmomd.

Before Cane, P.J., LaRocque and Myse, JJ.

La ROCQUE, J. Steve Chen appeals his judgment of divorce. Steve claims that the trial court erroneously included employee stock options as part of the marital estate. The stock options were granted during the marriage, but are not exercisable until dates occurring after the divorce. Steve argues that, as a result, the court improperly awarded his ex-wife an interest in his future endeavors. We conclude that the stock options were properly included in the marital estate. Because Steve has failed to show what, if any, portion of the options' value is attributable to future efforts, we affirm the judgment.

Steve and Lushiang Chen were married in 1971. In 1979, Steve obtained a position with Cray Research, Inc. At the time of the divorce, Steve owned various stock options granted by Cray. The option agreements enabled Steve to purchase Cray stock at a fixed price at certain intervals, regardless of market prices. Steve had satisfied the service requirements for some of the options, but others remained non-accrued, that is, unavailable pending completion of additional service requirements. A portion of the options could not be exercised until dates occurring after the divorce. The options, which may be exercised until 1990, may not be transferred or assigned. Also, the options expire if Steve's employment terminates for any reason other than death or disability.

The divorce judgment provided that all of the stock options, both accrued and non-accrued, were to be included in the marital estate subject to division. It allowed Steve to exercise the options if and when he desired, subject only to Cray and Security and Ex-

change Commission regulations. Ultimately, Steve is to pay Lushiang one-half of his net profit.

Steve seeks to exclude from the marital estate those options that were granted during the marriage but are unexercisable until after the divorce. He claims that the inclusion of those options in the marital estate improperly awards Lushiang an interest in his future endeavors. We disagree.

██ The trial court heard expert testimony that the present value of the stock options at the date of the divorce was impossible to determine. It rejected the testimony of Steve's expert as to present value. The weight and credibility to be accorded testimony is a trial court function. Thus, the trial court's finding that no present value can be determined is sustained on appeal. *See* sec. 805.17(2), Stats.

The court considered that the options must be exercised or would expire within the next few years. It observed "[t]he fact that Mr. Chen must work another two-and-one-half to three-and-one-half years for Cray Research does not constitute such a significant factor in the value of these options that they must be excluded from or discounted in the marital estate." The trial court considered SEC regulations, the fluctuations of the stock's price, Cray's sequential exercise restrictions, and tax consequences relative to the exercise of qualified or nonqualified stock options.

The trial court also considered the cost of the funds used to purchase the stock, as well as the tax rates. The trial court concluded that because no reasonably accurate present value can be assigned to the stock options, no award of a fixed sum would be practical. However, the court concluded that the stock options must be included in the marital estate.

■ Whether certain property is part of the marital estate subject to division presents a question of law that we decide without deference to the trial court's decision. *Overson v. Overson,* 125 Wis. 2d 13, 20–21, 370 N.W.2d 796, 800 (Ct. App. 1985). Generally, all of the parties' property at the date of divorce, except that derived through gift or inheritance, is subject to division. Section 767.255, Stats. Whether the asset is characterized as vested, unvested, or a future interest is a factor to be considered in the property division. Section 767.255(9), Stats. The mere fact that the interest in the asset is contingent does not mean that it may be ignored. *Leighton v. Leighton,* 81 Wis. 2d 620, 634–36, 261 N.W.2d 457, 464 (1978).

■ The trial court properly included the stock options, both accrued and non-accrued, in the marital estate. Although certain stock options are not exercisable until after the time of the divorce, they are nonetheless an economic resource acquired during the marriage. Generally, these stock options are given to key employees to motivate them to remain as employees and to increase efficiency and performance. *Carey v. Rathman,* 55 Wis. 2d 732, 738, 200 N.W.2d 591, 595 (1972). A stock option contract, like an unvested pension, is not a mere gratuity, but an enforceable contract right. *See Leighton,* 81 Wis. 2d at 635–36, 261 N.W.2d at 464. It is an economic resource, comparable to pensions and other employee benefits, and thus a form of property. *See Green v. Green,* 494 A.2d 721, 728 (Md. Ct. Spec. App. 1985). Although Steve's stock options are unassignable and unsalable, these are factors that relate to the issues of valuation and division.

Steve also contends that those options granted prior to the divorce, but after the parties separated, must be excluded from the marital estate. The marital estate is not to be limited to assets in existence at the time of the parties' separation, but is to include assets as they exist at the time of the divorce. *See Overson,* 125 Wis. 2d at 20, 370 N.W.2d at 799–800. Consequently, we find no merit to this argument.

Finally, Steve argues that the trial court improperly divided the stock options. Steve does not challenge that Lushiang is entitled to one-half of the marital estate. Rather, he contends that if the stock options are included in the marital estate we should adopt a method of division to reflect their nature as partly marital and partly separate property. He suggests a "time-rule" formula to separate out the portions of the options attributable to his post-divorce efforts. Although we approve of the use of a formula, we conclude that it is not mandatory for the trial court to use this formula in order to properly exercise its discretion in dividing the unexercised stock options.

A "time-rule" formula has been adopted in some jurisdictions. *See Salstrom v. Salstrom,* 404 N.W.2d 848, 851 (Minn. Ct. App. 1987). In California, one such formula provided that the unexercised stock options that were subject to division were

> the product of a fraction whose numerator is the length of service expressed in months by respondent . . . from the date of commencement of service to the date of separation of the parties and the denominator is the length of service expressed in months from the date of commencement of service

to the date when an option could be first exercised, multiplied by the number of shares that could be purchased on the date of exercise.

*Hug v. Hug,* 201 Cal. Rptr. 676, 679 (Ct. App. 1984).[1]

While approving the use of this formula, the *Hug* court stressed that "the trial courts, in the exercise of their discretion, are not limited to this formula . . . ." *Id.* at 678. Rather, "the trial court should exercise its discretion to fashion an equitable allocation of separate and community interests in employee stock options . . . ." *Id.* at 685.

Similarly, trial courts in Wisconsin have broad discretion in the division of the marital estate. *Selchert v. Selchert,* 90 Wis. 2d 1, 7, 280 N.W.2d 293, 296 (Ct. App. 1979). "The formula for division derives from the facts of the individual case." *Lacey v. Lacey,* 45 Wis. 2d 378, 383, 173 N.W.2d 142, 145 (1970). In an exercise of discretion, a trial court may reasonably reach a conclusion another judge may not reach. *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20–21 (1981). When the trial court has made no factual error, has applied the proper law, and has reached a reasoned decision, we sustain its discretionary determination. *Id.* at 66, 306 N.W.2d at 21.

---

[1]Variations of the formula exist. *See* cases collected at 46 A.L.R.4th 623 (1984). This formula is also similar to the Wisconsin marital property formula at sec. 766.62, Stats., which took effect January 1, 1986. This divorce action was commenced November 11, 1985, and neither party asked the trial court to apply sec. 766.62. Because the applicability of sec. 766.62 was not litigated at the trial level, we do not address it for the first time on appeal. *See Wirth v. Ehly,* 93 Wis. 2d 433, 443, 287 N.W.2d 140, 145 (1980).

Here, the trial court's method of division of the stock options was an appropriate exercise of discretion. In *Bloomer v. Bloomer,* 84 Wis. 2d 124, 135, 267 N.W.2d 235, 240–41 (1978), three methods of valuation and division of pension, profit sharing, and retirement rights were approved.[2] The third method was similar to the approach adopted by the trial court here. The trial court determined a percentage of the marital property each spouse was to receive and divided the profit from the stock option contracts accordingly. *See Selchert,* 90 Wis. 2d at 10–11, 280 N.W.2d at 298. This approach made it unnecessary to establish the present value. We conclude that this approach was within the trial court's discretion.

The judgment provides:

> Those stock options issued to Steve Chen, including both accrued and non-accrued options, shall be distributed pursuant to the following plan:
>
> a. Steve Chen may exercise his employee stock options at any time he wishes.
>
> b. Upon sale of any stock purchased through these employee stock options, Steve Chen shall pay Lushiang Chen, as soon as possible, one-half of his net profit.
>
> c. The net profit shall be computed by subtracting from the sale price of the stock the purchase price of the stock, the net after-tax interest on funds used to purchase the stock, and the net tax upon

[2]The first method is to divide the husband's contributions to the plan. The second method is to attempt to calculate present value of the future benefits. *Selchert,* 90 Wis. 2d at 10, 280 N.W.2d at 298.

the total gain, including gain occurring after the option is exercised. If the stock decreases in value after the option is exercised, one-half of Steve Chen's allowable capital loss times his tax rate shall be added to the purchase price. (i.e., one-half of any tax savings for Steve Chen shall go to Lushiang Chen just as she in essence pays one-half the cost of exercising the option.)

d. If 18 months after the date of exercise, the stock acquired has not been sold, then Lushiang Chen may elect to be paid an amount computed using the formula set forth in Paragraph 3, using the stock price 18 months from the date of exercise, or she may choose to wait until the stock is finally sold. If she makes no election within 19 months of the date of exercise, she must wait to be paid until the stock is sold, unless the parties mutually agree on a stock transfer to settle Steve Chen's potential liability to her.

e. At the time of any transaction involving Cray stock purchased or sold as a result of these options, Steve Chen shall provide a detailed accounting of the transaction to Lushiang Chen.

f. If there is no net profit, no additional monies are due either party. Because Lushiang Chen will have virtually no control over the exercise of the options, or the sale of the stock, she should not bear the responsibility for a loss.

The trial court's decision does not require Steve to remain at Cray, nor even to exercise the options. Nor does the decision treat the options as any form of income in setting maintenance. *See Ondrasek v. Ondrasek,* 126 Wis. 2d 469, 478–79, 377 N.W.2d 190, 193–94 (Ct. App. 1985) (it is error to include assets as part of the marital estate when they are also consid-

ered by the court as income for support or maintenance purposes).

Furthermore, Steve fails to establish that the court's formula divides profits attributable to his future services at Cray. Under sec. 767.255, it is presumed that the marital estate, except that part that is derived through gift or inheritance, is to be divided equally. The court may alter this distribution after considering relevant factors. Section 767.255(1) to (12), Stats. Earnings and assets acquired after the divorce are not part of the marital estate subject to division. *Overson,* 125 Wis. 2d at 20, 370 N.W.2d at 799. We reject Steve's argument because, based on the record, it would be mere conjecture to attempt to separate the portion of the net profits attributable to Steve's post divorce efforts.

Steve directs us to the Executive Stock Option Agreement, dated March 19, 1984, which provides that the "company desires by granting the written Option to induce Executive to continue his employment ... and to motivate Executive to advance the interest of the Company." Steve fails to note the preceding paragraph of the same contract, which reads: "The Executive has in the past made significant contributions to Company and has the ability by reason of training and experience to contribute to the future success of Company ...."

Thus, the observations of the *Hug* court apply: "[N]o single characterization can be given to employee stock options. Whether they can be characterized as compensation for future services, for past services, or for both, depends upon the circumstances involved in the grant of the employee stock option." *Hug,* 201 Cal. Rptr. at 681.

Here, the record fails to establish that by awarding Lushiang one-half of the net profit of the stock options that were granted during the marriage, but exercised after the divorce, the trial court improperly awarded her profits due to Steve's future services at Cray. Steve's argument ignores the usual growth in many investments due to market forces and innumerable other variables. Because the stock options are part of the marital estate, Lushiang and Steve have a presumptively equal interest in them. There is no compelling evidence that required setting the presumption aside in this case.

Due to the numerous factors a trial court need consider in reaching an equitable result, it is not possible for us to set forth a mechanical standard to fit every case. *Bahr v. Bahr,* 107 Wis. 2d 72, 84, 318 N.W.2d 391, 398 (1982). "While critics may claim this results in inconsistency, we believe the strength of the judicial system is enhanced when the judiciary possesses the ability in family law cases to tailor a remedy to fit the circumstances of the individual litigants before the court." *Hug,* 201 Cal. Rptr. at 686. We conclude, on the record before us, that the trial court reached an equitable result.

*By the Court.*—Judgment affirmed.