1999 PA Super 35

Terrence S. MacALEER, Appellee,

v.

Susan A. MacALEER, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 17, 1998.
Filed Feb. 19, 1999.

William R. Hagner, Paoli, for appellant.

William J. Gallagher, West Chester, for appellee.

Before JOHNSON, J., and MONTEMURO *, Judge, and CIRILLO, J.

JOHNSON, J.:

¶ 1 In this appeal we consider whether stock options granted to a spouse during the marriage as part of the spouse's compensation constitute marital property for the purposes of equitable distribution under Section 3501 of our Divorce Code when the right to exercise such options does not mature until after separation. We hold that, regardless of when the right to exercise the options matures, stock options granted during the marriage constitute marital property if the options are granted as compensation for past services rather than as consideration for future services. Accordingly, we affirm the order of the trial court.

¶ 2 The parties were married on June 23, 1973. From July 1974 to July 1986, Husband's employer, Shared Medical Systems Corp. (SMS), granted Husband ten stock options. Five of the options granted between July 1974 and March 1980 either expired or were exercised prior to separation and are not at issue in the instant case. Four of the remaining five options, offering 18,000 shares at the exercise price range of $23.4375 to $31.6250, awarded between August 1982 and July 1986, were cancelled by SMS on October 18, 1987. On the same date, SMS replaced these four options with four new options, identical in number of shares, but at a reduced exercise price of $19.90. On May 8, 1990, SMS cancelled the four options granted in October 1987 and the remaining stock option granted in August 1982, and replaced them with stock option grant number 000793, offering 21,750 shares at a reduced exercise price of $12.500. Husband was entitled to purchase twenty percent (20%) of the shares on or after each anniversary date, beginning May 8, 1992, with the right to exercise this stock option scheduled to expire on May 8, 2000. In addition, on January 9, 1991, SMS issued Husband a new stock option, grant number 001044, offering 30,000 shares at an exercise price of $13.9375. Husband was entitled to purchase twenty-five percent

(25%) of the shares on or after January 9, 1994, and seventy five percent (75%) on or after January 9, 1995. This option could be exercised until January 9, 2001, the expiration date of the grant. On April 19, 1993, SMS also granted Husband a stock option to purchase an additional 508 shares; however, these are not at issue in the instant case.

¶ 3 The parties separated in February 1992. Between August 6, 1992, and January 16, 1996, Husband exercised his option under grant number 000793 to purchase 17,400 shares. Between June 22, 1994, and January 16, 1996, Husband exercised his option under grant number 001044 to purchase 22,500 shares. The master determined that these 39,900 shares, with a net after-tax gain of $448,008, constituted marital property. Husband filed exceptions to the master's report arguing, among other things, that the master incorrectly included the 39,900 shares as marital property because, although the options were granted during the parties' marriage, they could not be exercised until after the parties separated. After oral argument, the court entered an order dissolving the parties' marriage and denying several of the parties' exceptions, including Husband's exception to the master's determination that these 39,900 shares constituted marital property. Husband then appealed to this Court.

¶ 4 "Whether an asset is marital property or separate property for purposes of distribution of the marital estate, is a matter reserved to the sound discretion of the trial court." *Carney v. Carney*, 449 Pa.Super. 179, 673 A.2d 367, 368 (1996). When reviewing the record of the proceedings,

we are guided by the fact that trial courts have broad equitable powers to effectuate justice and we will find an abuse of discretion only if the trial court has misapplied the law or failed to follow proper legal procedures. The finder of fact is entitled to weigh the evidence presented and assess its credibility. The fact finder is free to believe all, part, or none of the evidence and the Superior Court will not disturb the

---

* Retired Justice assigned to Superior Court.

**832**

credibility determinations of the court below.

*Gaydos v. Gaydos*, 693 A.2d 1368, 1371 (Pa.Super.1997) (citations and internal quotation marks omitted).

¶ 5 Husband first argues that to designate the stock options as "property acquired" distorts the common sense meaning of the words, settled case law, and the tenets of basic statutory construction. In essence, Husband argues that he was merely granted options to purchase property, but that he did not acquire any property, during the marriage. Because the stock options could be terminated if Husband's employment was terminated or his position were changed to one of lesser responsibility, Husband contends that the stock options constituted mere expectancies or future interests. Consequently, Husband concludes that because he did not receive actual possession or control until the right to exercise the option matured after the parties separated, the stock options are not martial property. We disagree.

¶ 6 Marital property is defined as "all property acquired by either party during the marriage ... except ... [p]roperty acquired after final separation...." 23 Pa. C.S. § 3501(a)(4). Thus, whether the stock options at issue were properly characterized as marital property subject to distribution under Section 3501 of our Divorce Code is a matter of statutory interpretation. "When interpreting a statute '[w]ords must be given their plain meaning, unless doing so would create an ambiguity, and we must interpret statutes in accordance with the legislative intent.'" *McGinley v. McGinley*, 388 Pa.Super. 500, 565 A.2d 1220, 1225 (1989) (quoting *Semasek v. Semasek*, 509 Pa. 282, 502 A.2d 109 (1985)). *See also* 1 Pa.C.S. § 1921(a) (stating that when interpreting and construing statutes, the object must be to "ascertain and effectuate the intention of the General Assembly").

¶ 7 Our legislature expressed its intent in Section 3102 of our Divorce Code, which reads in relevant part:

§ 3102. **Legislative findings and intent**

(a) **Policy.**—The family is the basic unit in society and the protection and preservation of the family is of paramount public concern. Therefore, it is the policy of the Commonwealth to:

\*    \*    \*    \*    \*    \*

(6) Effectuate economic justice between parties who are divorced or separated and ... insure a fair and just determination and settlement of their property rights.

(b) **Construction of part.**—The objectives set forth in subsection (a) shall be considered in construing provisions of this part [Part IV Divorce] and shall be regarded as expressing the legislative intent.

23 Pa.C.S. § 3102. Moreover, our legislature has granted broad equitable powers to our courts to effectuate the purposes for which the Divorce Code was enacted. *See id.* § 3323(f).

¶ 8 This Court has considered the definition of property subject to equitable distribution in the context of pension benefits. In concluding that pensions benefits, whether or not vested, constituted marital property under Section 3501, we reasoned that "[w]here the employee 'benefits result from employment during the marriage, they are marital property since the benefits are received in lieu of higher compensation which would have enhanced the marital assets or the marital standard of living.'" *Berrington v. Berrington*, 409 Pa.Super. 355, 598 A.2d 31, 34–35 (1991), *aff'd*, 534 Pa. 393, 633 A.2d 589 (1993) (quoting *Braderman v. Braderman*, 339 Pa.Super. 185, 488 A.2d 613, 618 (1985)). We also stated: "Since a pension benefit is an economic resource acquired with funds that would otherwise have been utilized by the parties during their marriage to purchase other assets, it constitutes marital property." *Id.* (internal quotation marks omitted). Accordingly, to the extent that the right to receive pension benefits accrues during the marriage, then each spouse would have a reasonable expectation to the portion of the pension benefits that accrues during the marriage. *LaBuda v. LaBuda*, 349 Pa.Super. 524, 503 A.2d 971, 976 (1986). *See also Gordon v. Gordon*, 545 Pa. 391, 681 A.2d 732 (1996); *Brown v. Brown*, 447 Pa.Super. 424, 669 A.2d 969 (1995); *Major v. Major*, 359 Pa.Super. 344, 518 A.2d 1267 (1986).

¶ 9 We find stock options to be comparable to pension benefits in that they are also employee benefits that "are received in lieu of higher compensation." *Cf. Berrington*, 598 A.2d at 34–35. Thus, the determining factor is not when the right to exercise the option matures, but whether the stock option is earned prior to the date of separation. *Cf. LaBuda*, 503 A.2d at 976; *Braderman*, 488 A.2d at 618 ("Only that portion of the pension attributable to the period commencing with the marriage and ending on the date of separation is marital property within the meaning of the Divorce Code.") Because a stock option may be awarded for a variety of purposes, including compensation for past or present services or as an incentive for future services, the purpose(s) for which the option was granted must be considered. If the employer awards a stock option solely to compensate the employee for past services, then the option is deemed to be earned when awarded. If awarded for future services, then the option is deemed to be earned when the right to exercise the option matures. Simply stated, the trial court is to apportion stock options between marital and non-marital property according to when they are earned.

¶ 10 "All real or personal property acquired by either party during the marriage is *presumed* to be marital property." 23 Pa.C.S. § 3501(b) (emphasis added). This presumption may be overcome by showing that the property was acquired after final separation. *Id.* § 3501(a)(4), (b). Thus, the burden of demonstrating that stock options are separate property belongs to the spouse to whom the options were granted.

¶ 11 Here, Husband argued to the master that although the stock options were bestowed on him as part of his overall compensation package, they were not granted to compensate him for past services, but instead were consideration for future services. The master found that Husband failed to demonstrate that SMS awarded him the options to secure his future performance. The trial court agreed with the master and determined that SMS's stock option plan was a standard and typical plan, not tied to Husband's future performance so as to be treated differently than any other component of his compensation benefits package. Consequently, the trial court determined that the shares of stock purchased under option grants numbered 000793 and 001044 were marital property.

¶ 12 On appeal, Husband renews his assertion that because his right to exercise the options required his continued service to SMS for periods of two to six years following the dates of the grants, the stock options constituted incentives for future services. This is insufficient to overcome the presumption that the stock options at issue constitute marital property. Husband is required to demonstrate that he *earned* the options after separation. Continued employment is merely a contingency to be met before the right to exercise any such option matures. Accordingly, under the facts and circumstances of this case, we find the stock options at issue to constitute marital property. Consequently, we conclude that the trial court did not abuse its discretion by including, as marital property subject to equitable distribution, the 39,900 shares of stock purchased by Husband subsequent to the parties' separation.

¶ 13 Our holding today is in accord with the conclusions of several other jurisdictions that have considered the issue of whether stock options granted during the marriage constitute marital property when the right to exercise such options does not mature until after separation or dissolution. The trend in these jurisdictions is to treat these stock options as marital or community property regardless of when the right to exercise the options matures so long as the options are granted as compensation for services rendered during the marriage. *See In re Marriage of Hug*, 154 Cal.App.3d 780, 201 Cal. Rptr. 676, 681 (1984); *Bornemann v. Bornemann*, 245 Conn. 508, 517–18, —— A.2d —— (1998); *Goodwyne v. Goodwyne*, 639 So.2d 1210, 1213 (La.App.1994); *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848, 856 (1998); *Pascale v. Pascale*, 140 N.J. 583, 660 A.2d 485, 498 (1995); *Garcia v. Mayer*, 122 N.M. 57, 920 P.2d 522, 525 (App.1996); *In re Marriage of Powell*, 147 Or.App. 17, 934 P.2d 612, 615 (1997). *Dietz v. Dietz*, 17 Va.App. 203, 436 S.E.2d 463, 470 (1993); *Chen v.*

*Chen*, 142 Wis.2d 7, 416 N.W.2d 661, 665 (App.1987).

¶ 14 Some jurisdictions concluded, as we do, that stock options are like a pension or other employment benefit. *See Green v. Green*, 64 Md.App. 122, 494 A.2d 721, 728 (1985); *Chen*, 416 N.W.2d at 663. Accordingly, stock options earned during the marriage constitute an economic resource and, thus, a form of property. *Id.* Some jurisdictions also based their decision expressly on the contractual right of an employee to receive a promised benefit under prescribed conditions, which is a valuable form of intangible property. *See Bornemann*, 245 Conn. at 518, —— A.2d ——. *See also In re Marriage of Hug*, 201 Cal.Rptr. at 684; *Green*, 494 A.2d at 728. We note particularly the analysis of the Supreme Court of Connecticut:

> Generally speaking, much like the right of a pension beneficiary to collect a pension once the particular conditions under which the pension was offered have been satisfied – typically, the attainment of a prescribed age and the fulfillment of a required number of years of service for the employer – the holder of a stock option possesses the right to accept, under certain conditions and within a prescribed time period, the employer's offer to sell its stock at a predetermined price. . . .
>
> Despite the fact that the stock options at issue in this case had not yet matured or vested at the time of dissolution, the options created an enforceable right in the defendant.

*Bornemann*, 245 Conn. at 517–18, —— A.2d —— (citations and internal quotation marks omitted).

¶ 15 A minority of jurisdictions have adopted a *per se* rule that does not require a fact-specific analysis to determine when such stock options are earned. At least three states have decided that all stock options granted during the marriage are marital property. *See Green*, 494 A.2d at 728 (reasoning that stock options granted to employee spouse during marriage are acquired during the marriage); *Bodin v. Bodin*, 955 S.W.2d 380, 381 (Tex.App.1997) (relying, without analysis, on conclusion reached by

state supreme court that unvested military pension benefits constitute a marital asset and on conclusion reached by majority of jurisdictions); *Smith v. Smith*, 682 S.W.2d 834, 837 (Mo.App.1984) (stating that stock options are earned when granted). Conversely, others have concluded that despite the purpose for which the stock option was granted, stock options not exercisable by either the date of the dissolution of marriage or separation are not marital property. *See Hann v. Hann*, 655 N.E.2d 566, 571 (Ind. App.1996) (finding its treatment of stock options to be consistent with statutory scheme that includes pension benefits as marital property only if either party has a vested right to withdraw benefits and right cannot be forfeited upon termination); *Hall v. Hall*, 88 N.C.App. 297, 363 S.E.2d 189, 195–96 (1987) (reasoning that only stock options that are "exercisable upon the date of separation or which may not be cancelled" constitute marital property, whereas options that are not exercisable upon the date of separation or which can be cancelled constitute "an expectation of a future right contingent upon continued service and should be considered separate property"). We decline to follow either of these "per se" rules because both would undermine the objectives of equitable distribution under our Divorce Code. Including as marital property all stock options granted during the marriage would erroneously include compensation for services to be performed after separation, which would not be a product of the marriage. By contrast, excluding from marital property all stock options that do not mature until after separation would erroneously exclude compensation earned during the marriage and, thus, deprive the opposing spouse of his or her equitable portion of the compensation.

¶ 16 We are persuaded by the majority approach that apportions stock options not yet matured between marital and non-marital property based upon when the options are earned. This approach is analogous to the manner in which we apportion pension benefits between the parties. More importantly, however, by allowing for apportionment of the options between marital and non-marital property based upon when the options are

earned, the majority approach advances the intent of our legislature that in determining whether an asset constitutes marital property, we do so with the intent to "[e]ffectuate economic justice between parties .... and insure a fair and just determination and settlement of their property rights." *See* 23 Pa.C.S. § 3102(a)(6).

¶ 17 Husband asserts that the trial court erred in relying on *Gordon v. Gordon,* 436 Pa.Super. 126, 647 A.2d 530 (1994), *rev'd on other grounds,* 545 Pa. 391, 681 A.2d 732 (1996), to support its determination that the stock options at issue here constitute marital property. In *Gordon,* the stock option plan entitled the husband to purchase a prescribed number of shares of stock at a prescribed amount on an annual basis. The husband did so consistently from July 1970 through June 1978. The parties separated on December 31, 1997. There, however, the status of the asset, that is, whether the stock options constituted marital or non-marital property, was not at issue. *See id.* at 540. Rather, the husband argued merely that the trial court made a mathematical error in its calculation of the number of shares of stock that constituted marital property. *Id.* The trial court acknowledged and corrected the error in its opinion, and we merely agreed with the corrected calculation. *See id.* Consequently, our determination in *Gordon* was made without any analysis or discussion of the issue raised in the instant appeal and, thus, does not impact our decision today. Though we find the trial court's reliance on *Gordon* misplaced, we find its error harmless.

¶ 18 Husband also argues that the trial court erred in adopting the master's calculations of Husband's net gain from the exercise of the stock options because the master made calculations without using a coverture fraction. In using a coverture fraction, the court applies a formula where "[t]he numerator of the fraction reflects the total period of time the employee spouse participated in the plan during the marriage, and the denominator is the total period the employee participated in the benefits program." *Brown,* 669 A.2d at 973. The sole purpose of the coverture fraction, then, is to determine what portion of the value of the benefits is attributable to the years of marriage, constituting marital property subject to equitable distribution. *Id.*

¶ 19 Susan A. MacAleer (Wife) argues that Husband waived his right to appellate review of this issue because he failed to first present it to the trial court by filing exceptions to the master's report. We agree. *See* Pa.R.C.P.1920.55–2(b) ("Matters not covered by exceptions are deemed waived unless, prior to the entry of the final decree, leave is granted to file exceptions raising those matters."). Nevertheless, we note that by raising the issue of coverture fraction, Husband is raising the important question of how to apportion those shares of stock purchased pursuant to a stock option granted during the marriage. Because we have concluded that the trial court did not err in determining that all stock options granted to Husband during the marriage constituted marital property, the use of a coverture fraction was unnecessary to apportion those shares purchased subsequent to the parties' separation.

¶ 20 We do not, however, consider those instances where the use of a coverture fraction or similar formula may be required because the stock option represents both compensation for past services and consideration for future services. Nor do we consider those instances where the trial court might retain jurisdiction until such time as the options are exercised or expire so that the court may apportion profit realized, if and when the options are exercised. We simply hold that where a stock option is granted to a spouse during the marriage as compensation for services also rendered during the marriage, such an option constitutes marital property even if the right to exercise the option does not mature until after separation.

¶ 21 Accordingly, we affirm the order of the trial court.

¶ 22 Order **AFFIRMED.**