NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

*In re the Matter of:*

DAMON V. HOVANNISIAN, *Petitioner/Appellee,*

*v.*

CONNIE E. HOVANNISIAN, *Respondent/Appellant.*

No. 1 CA-CV 19-0385 FC
FILED 8-11-2020

---

Appeal from the Superior Court in Maricopa County
No. FC2017-053905
The Honorable Roy C. Whitehead, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART;
REVERSED AND REMANDED IN PART**

---

COUNSEL

The Cavanagh Law Firm PA, Phoenix
By Christina S. Hamilton
*Counsel for Petitioner/Appellee*

Berkshire Law Office PLLC, Tempe
By Keith Berkshire, Erica L. Gadberry
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Chief Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Samuel A. Thumma and Judge Randall M. Howe joined.

---

**S W A N N**, Chief Judge:

¶1 Connie E. Hovannisian ("Wife") appeals from several rulings in the decree dissolving her marriage to Damon V. Hovannisian ("Husband"). For the reasons set forth below, we vacate the order characterizing Wife's 2019 bonus as community property and we remand for the entry of an order identifying the bonus as Wife's separate property. We reverse and remand for reconsideration of the legal-decision-making award, the child-support award, and the award of attorney's fees. We affirm the decree in all other respects.

## FACTS AND PROCEDURAL HISTORY

¶2 Husband and Wife married in 2005. They have two minor children. Husband served Wife with the petition for dissolution on September 18, 2017. Wife worked as a corporate executive throughout the marriage, and Husband worked as a restaurant manager until he was laid off in March 2018.

¶3 In 2017, the Securities and Exchange Commission ("SEC") sued Husband, two of his relatives, and a friend for trading on inside information regarding Wife's employer. Wife had worked on a confidential project involving the acquisition of her company by another corporation in 2014. When the acquisition was made public, the value of stock in Wife's company increased substantially. According to the SEC complaint, Husband improperly obtained nonpublic information about the pending acquisition from Wife, traded on this inside information, and tipped off three other people who also traded on the information.

¶4 Without telling Wife, Husband entered a settlement with the SEC, which required him to pay a civil penalty of more than $155,000. To pay the civil penalty, Husband borrowed the money from his father and signed a promissory note for the debt, again without informing Wife. Wife was investigated by the SEC and her employer, but she was never charged with any wrongdoing. Wife spent $16,388 on attorney's fees defending

herself in the SEC investigation, and Husband incurred an additional $4,308 in fees.

**¶5** While the parties were still living in the same house, Wife discovered that Husband had hidden a recording device in her bedroom—which he later admitted he had used since 2016 to record her private conversations. Wife obtained an order of protection and the parties ceased cohabiting. The parties went to trial in the subsequent dissolution action in January 2019.

**¶6** The superior court awarded the parties joint legal decision-making authority regarding their children, concluding that the order of protection did not preclude an award of joint legal decision-making authority because Husband had not committed "substantial" domestic violence when he surreptitiously recorded Wife's conversations. The court attributed an income of $94,000 to Husband for child support, rejecting Wife's argument that he could earn more based on his work history. In dividing property, the court rejected Wife's claim for waste relating to the SEC debt and legal fees, equally divided Wife's 2019 retention bonus, adopted Husband's valuation of the real property, and equally divided a Fidelity account. The court also allocated personal property and awarded Husband $30,000 in attorney's fees based on findings that Wife had greater financial resources and took unreasonable positions. Wife appeals from the final decree.

## DISCUSSION

I.      THE SUPERIOR COURT FAILED TO APPLY AND MAKE FINDINGS UNDER A.R.S. § 25-403.03.01(E) WHEN DETERMINING LEGAL DECISION-MAKING AUTHORITY.

**¶7** We must reverse a legal decision making order if the superior court abused its discretion. *See Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018). The court abuses its discretion when the record does not support its decision or when it commits an error of law in reaching a discretionary conclusion. *Id.* We defer to the court's factual findings unless clearly erroneous, but we review de novo its conclusions of law and interpretation of statutes. *Id.*

**¶8** A.R.S. § 25-403 provides that in a contested case, the court must determine legal decision making authority consistent with the children's best interests. In determining the children's best interests, the court must consider "[w]hether there has been domestic violence . . . pursuant to § 25-403.03." A.R.S. § 25-403(A)(8). Section 25-403.03(A)

3

precludes an award of joint legal-decision-making authority "if the court makes a finding of significant domestic violence pursuant to § 13-3601 or if the court finds by a preponderance of the evidence that there has been a significant history of domestic violence." However, even if the court finds no "significant" domestic violence under § 25-403.03(A), "[t]he court shall consider evidence of domestic violence as being contrary to the best interests of the child[ren]." A.R.S. § 25-403.01(B); *see also DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 11 (App. 2019). In fact, under § 25-403.01(D), "[i]f the court determines that a person who is seeking sole or joint legal-decision making has committed an act of domestic violence against the other parent [and the victim has not also committed an act of domestic violence], there is a rebuttable presumption that an award of sole or joint legal decision making authority to the parent who committed the act of domestic violence is contrary to the child's best interests." A person commits an act of domestic violence for purposes of § 25-403.01(D) if he or she "[e]ngages in a pattern of behavior for which a court may issue an ex parte order to protect the other person who is seeking child custody." A.R.S. § 25-403.01(D)(3). "Before awarding sole or joint legal decision-making authority to the offending parent, the court must make specific findings on the record that there is sufficient evidence to rebut the presumption," considering multiple factors set forth in § 25-403.03(E). *DeLuna*, 247 Ariz. at 423, ¶ 12.

¶9 Here, the superior court found that the order of protection did not establish "substantial" domestic violence. Though one reasonably could disagree with the superior court's finding on this record, we must defer to it. The finding pertained to the analysis under § 25-403.01(A) only. The court did not cite to § 25-403.01(E) or make any findings under its rubric. Though the court addressed some of the § 25-403.01(E) factors as part of its other analyses, it did not make findings regarding all of the factors and it did not consider any findings within the context of the question presented by § 25-403.01(E). Further, we will not, as Father urged at oral argument on appeal, speculate that any § 25-403.01(E) factors for which the court made no coincidental findings did not apply on this record. *See DeLuna*, 247 Ariz. at 424, ¶ 16 ("We cannot infer that the court considered [the § 25-403.03(E)] factors when making its decision."). The court's failure to consider and make findings under § 25-403.01(E) constituted an abuse of discretion. We reverse the award of joint legal decision making authority, and we remand for reconsideration in accordance with all applicable provisions of § 25-403.03.

II.      THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION BY CONCLUDING THAT THE DEBTS RELATED TO THE SEC INVESTIGATION DID NOT CONSTITUTE WASTE.

¶10      Wife contends that the superior court erred by not finding waste with respect to the promissory note by which Husband assumed debt to pay for his settlement with the SEC, and also with respect to her and Husband's legal fees incurred in connection with the SEC investigation and suit.

¶11      We review the superior court's allocation of community property for an abuse of discretion. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 346, ¶ 5 (App. 1998). "A debt incurred by a spouse during marriage is presumed to be a community obligation; a party contesting the community nature of a debt bears the burden of overcoming that presumption by clear and convincing evidence." *Hrudka v. Hrudka*, 186 Ariz. 84, 91–92 (App. 1995). In determining whether the presumption has been rebutted, the court may consider a spouse's "excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community . . . property." A.R.S. § 25-318(C). The spouse alleging abnormal or excessive expenditures has the burden to make a prima facie showing of waste, after which the other spouse must present evidence to rebut the showing. *Gutierrez*, 193 Ariz. at 346–47, ¶ 7.

¶12      The superior court concluded that the promissory note was presumptively a community debt because it was incurred during the marriage. The court found that Wife failed to rebut that presumption because the insider information "came from [Wife]" and Husband's settlement allowed Wife to keep her job; the court also noted that Wife has a pending civil action against Husband seeking damages for her share of this debt. Similarly, the court rejected Wife's claim that the legal fees related to the SEC investigation constituted waste because the fees were not excessive or abnormal, the fees were necessary for Wife to keep her job, and Wife asserted a claim for the fees in the civil action.

¶13      Wife contends that the promissory note and the legal fees constitute waste because, consistent with her employer's and the SEC's findings, she was not involved in Husband's insider trading. The superior court's findings suggest that it concluded Wife was somehow aware of or complicit in Husband's insider trading. Viewing the facts in the light most favorable to sustaining the court's findings and deferring to the court's credibility determinations and the weight to give conflicting evidence, *see Gutierrez*, 193 Ariz. at 346, 347, ¶¶ 5, 13, Husband's testimony supports the

court's conclusion that Wife was not without responsibility for these debts and expenses.[1] Husband testified that he found out about the sale of Wife's company "from a wink and a nod from . . . [Wife] when I asked her about it" and that she learned of his stock purchase before the SEC investigation began. Husband also testified that he exercised his right against self-incrimination during the investigation and agreed to the settlement "to save [Wife]'s position and career." We affirm the superior court's conclusion that Wife did not establish community waste.[2]

### III. THE SUPERIOR COURT ERRONEOUSLY CHARACTERIZED WIFE'S POST-SERVICE RETENTION BONUS AS COMMUNITY PROPERTY.

**¶14** The decree allocated two of Wife's retention bonuses. The allocation of the first bonus, which Wife received in 2017 for services rendered in 2017 ("the 2017 bonus"), is not at issue. At issue is the allocation of the second bonus, which Wife's employer offered her on September 19, 2017, just one day after the petition for dissolution was served, payable on and contingent on her remaining employed through September 30, 2019 ("the 2019 bonus"). The court found that the entire 2019 bonus was community property because it was earned during the marriage but payment was delayed due to the SEC investigation. Wife contends that the classification of the bonus as community property was error. The characterization of property as community or separate is a question of law that we review de novo. *Schickner v. Schickner*, 237 Ariz. 194, 199, ¶ 22 (App. 2015).

**¶15** The parties do not dispute that the 2019 bonus was offered *after* the community terminated. Therefore, it is presumptively Wife's separate property. A.R.S. §§ 25-211(A)(2), -213(B). As the party challenging

---

[1]    We note that *Helland v. Helland*, cited by the superior court, did not hold that a spouse's criminal activity can never constitute waste—it merely held that the wife in that case failed to establish any causal relationship between the husband's criminal activity and the lower value of the community medical practice. 236 Ariz. 197, 201, ¶¶ 20–21 (App. 2014).

[2]    We disagree with Wife that the superior court denied her waste claim based on an erroneous application of issue preclusion. The court did not find that Wife's civil suit precluded a finding of waste; rather, it concluded that Wife failed to rebut the presumption that the debts were community obligations.

the presumption, Husband had the burden of proving the community nature of the 2019 bonus by clear and convincing evidence. *Cf. Hrudka*, 186 Ariz. at 91–92. Husband had to show that the 2019 bonus was intended to compensate Wife for services rendered during the marriage. *See Brebaugh v. Deane*, 211 Ariz. 95, 99–101, ¶¶ 19–21, 25 (App. 2005).

¶16 The evidence did not show that the 2019 bonus was intended to retroactively compensate Wife for the time she was under investigation. To the contrary, the offer expressly stated that it was made "[i]n recognition of the importance of [Wife's] engagement and commitment to the future of [the company.]" To earn the bonus, Wife had to remain employed through September 30, 2019.

¶17 The only evidence suggesting that the 2019 bonus was earned during the marriage was Husband's testimony that in the civil suit Wife filed against him, she claimed that her employer delayed offering her a bonus from July 2016 to October 2017 when the SEC completed its investigation. Wife confirmed that she was not eligible to receive a retention bonus until the SEC investigation was complete. But she did not specify whether the delay related to the 2017 or 2019 bonus—and even if it was the 2019 bonus that was delayed, no evidence suggested what, if any, portion of the 2019 bonus Wife earned before the dissolution petition was served. Husband's evidence was insufficient to rebut the separate-property presumption. *See id.* at 99, ¶ 15 (holding that language indicating stock option was intended to encourage employee to remain with company sufficiently rebutted the presumption of community property). We therefore vacate the superior court's order characterizing the 2019 bonus as community. On remand, the court shall award the 2019 bonus to Wife as her separate property.

IV. THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION IN ALLOCATING THE REAL PROPERTY.

¶18 The parties owned seven rental properties. The superior court allocated those properties based on its finding that the parties agreed regarding the properties' value and equity. The court awarded the rental properties to Husband at the agreed-upon value and awarded Wife an equalization payment.

¶19 Wife contends that the superior court erred when it found that she agreed with Husband's valuation, which was not based on an independent appraisal and which she testified would require verification. But "an owner of property is always competent to testify as to the value of

his property." *Town of Paradise Valley v. Laughlin*, 174 Ariz. 484, 486 (App. 1992) (citation omitted). If Wife disagreed with Husband's valuation, it was incumbent on her to provide evidence of different values. She did not do so.

**¶20** Wife argues that under *Leathers v. Leathers*, 216 Ariz. 374, 378, ¶ 19 (App. 2007), Husband should be bound by his pretrial statement, which stated that if Wife disagreed with his valuation, the rental properties should be sold. Wife's pretrial statement used Husband's valuation, noting that it was based on online appraisals giving "approximate" and "estimated" values, and asking for independent appraisals if Husband wanted to purchase the rental properties. As noted above, it was Wife's obligation to provide her own appraisals if she disagreed with those used by Husband. She cannot now claim that the court abused its discretion when she failed to provide an alternative valuation. *See Reyes v. Town of Gilbert*, 247 Ariz. 151, 159–60, ¶ 35 (App. 2019) ("Of course, the joint pretrial statement is subject to modification or limitation by previous disclosures and the superior court.").

**¶21** Wife also argues that the superior court abused its discretion because it treated the rental properties differently than the marital residence, for which the court accepted Husband's valuation and ordered that Wife could either buy out Husband's interest or the parties could sell the residence and split the proceeds equally. The court did not treat the properties differently—in both cases the court provided for an equitable division. And in the case of the marital residence, Wife wanted to buy out Husband's interest and the court explained that Husband's appraisal was more reliable than Wife's because it was more recent and well-supported. We affirm the allocation of the real property.

V.     THE SUPERIOR COURT FAILED TO CONSIDER ALL RELEVANT FACTORS BEFORE ATTRIBUTING HUSBAND'S INCOME FOR CHILD SUPPORT PURPOSES.

**¶22** At the time of trial, Husband had been unemployed for approximately nine months since being laid off. He previously worked as a restaurant manager, earning a maximum annual salary of $94,000. Husband also receives $5,361 per month in passive income from a separate family business. The superior court imputed to Husband an annual income of $94,000—so only $2,472.33 per month more than his passive income—for purposes of child support. Wife contends that the court erred by not attributing a higher income to Husband based on his earning capacity.

¶23 We review child support awards for an abuse of discretion, and we accept the superior court's findings of fact unless they are clearly erroneous. *Engel v. Landman*, 221 Ariz. 504, 510, ¶ 21 (App. 2009). Whether the court can attribute a higher income than the party is earning is a question of law that we review de novo. *Pullen v. Pullen*, 223 Ariz. 293, 295, ¶ 9 (App. 2009).

¶24 The Child Support Guidelines allow the superior court to attribute income up to earning capacity when a parent is unemployed or working below his or her full earning capacity, "[i]f earnings are reduced as a matter of choice and not for reasonable cause." A.R.S. § 25-320 app. § 5(E). The court should consider the reasons for the parent's reduced income and should balance all relevant factors. *Id.*; *Little v. Little*, 193 Ariz. 518, 522–23, ¶¶ 13–15 (1999). The court must consider, among other things, "whether the parent's current educational level and physical capacity provide him or her with the ability to find suitable work in the marketplace," whether "the additional training is likely to increase the parent's earning potential," whether "length of the parent's proposed educational program" is such that the parents will benefit from the future income, whether "the parent is able to finance his or her child support obligation while in school through other resources such as loans or part-time employment," and "whether the parent's decision is made in good faith." *Little*, 193 Ariz. at 522–23, ¶¶ 13–15.

¶25 Husband testified that he was changing careers to be available for the children. Husband testified that historically he had worked nights and weekends as a restaurant manager, and that Wife had threatened that such a work schedule would not permit equal parenting time. He stated that his goal was to work in real estate. He had not, however, applied for any jobs or taken any steps to obtain a real estate license during his ten months' unemployment.

¶26 The superior court considered Wife's threat and Husband's stated intention to change careers, but the court made no mention of the myriad other factors required to be considered under *Little*. On this record, we reverse the child support award and remand for reconsideration consistent with *Little*.[3]

---

[3] The parties agree that the child support order incorrectly attributed two additional children to Husband. On January 22, 2020, the parties stipulated that this was an error and agreed to a corrected amount and to adjust for the resulting overpayment after the appellate mandate.

## VI. THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION BY EQUALLY DIVIDING THE PARTIES' COMMUNITY CASH ACCOUNT.

¶27  The parties had a community cash account at Fidelity.  The superior court ordered the account divided equally.  Wife contends that this was contrary to an agreement the parties reached at the trial.

¶28  The parties agreed at trial to divide the Fidelity account equally.  Wife's attorney then added that there was "small pre and post . . . appreciation to the Fidelity account, which I believe [Husband's attorney] is aware of.  But . . . that should be determined by the division (indiscernible)."  Husband's attorney responded, "That's fine."  The judge then said, "Okay.  Thank you."

¶29  Even if the foregoing exchange constituted an agreement that the Fidelity account needed to be divided in an unequal manner, the agreement was not binding on the court because it was not "submitted and approved by the court as provided by law."  ARFLP 69(b).  If the parties wished to make a property-division agreement binding on the court, they had to place the terms clearly on the record and ask the court to approve the stipulation.  ARFLP 69(a), (b).  They did not do so, so we find no abuse of discretion in the court's equal division of the account.

## VII. THE EVIDENCE SUPPORTS THE SUPERIOR COURT'S ALLOCATION OF THE PARTIES' PERSONAL PROPERTY.

¶30  The superior court allocated the parties' personal property by granting Wife the option of dividing the property pursuant to Husband's list in Exhibit 39 or allowing Husband to purchase 100% of the property from Wife at the values stated in her Exhibit 98.  The court went on to award Husband the watches in his possession and to award Wife the jewelry, handbags, and memorabilia in her possession.  The court found that the watches were worth $25,900 and that the jewelry, handbags, and memorabilia were "of comparable [ ] value."

¶31  The decree exempted the jewelry, handbags, and memorabilia in Wife's possession from the property that Wife had the option of dividing or allowing Husband to purchase.  However, because Exhibits 39 and 98 were not admitted in evidence, the record does not show whether there was, as Wife contends on appeal, memorabilia listed on those exhibits.  We presume that any jewelry, handbags, and memorabilia listed in Exhibits 39 or 98 that were not in Wife's possession are subject to the division Wife selects.

¶32          Wife also contends that the superior court erred by including her engagement and wedding rings as part of the property equalization because they were separate property gifts whereas Husband's watches were community property.  According to Wife, this resulted in an inequitable allocation of personal property.

¶33          In allocating the personal property, the superior court referred to several exhibits that were not admitted in evidence.  Exhibit 17, which is in the record, shows that the watches were worth $25,900.  The women's jewelry listed in Exhibit 99 (also in the record), excluding Wife's engagement and wedding rings, was valued at $16,400.  Husband testified that the jewelry, handbags, and memorabilia in Wife's possession were purchased with community gambling winnings during the marriage and had a value equal to or greater than the watches in his possession.  This evidence supports the court's determination that these items were community property and that the jewelry, handbags, and memorabilia awarded to Wife were equal in value to the watches awarded to Husband.  We affirm the allocation of the personal property.

VIII.    THE SUPERIOR COURT MUST RECONSIDER THE GROUNDS FOR AWARDING ATTORNEY'S FEES ON REMAND.

¶34          The superior court may award attorney's fees "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings."  A.R.S. § 25-324(A).  We review an award of attorney's fees for an abuse of discretion. *Mangan v. Mangan*, 227 Ariz. 346, 352, ¶ 26 (App. 2011).

¶35          The superior court awarded Husband $30,000 in attorney's fees, finding that Wife had greater financial resources and had taken unreasonable positions.  Among the positions the court found unreasonable were Wife's (1) claim for waste of community funds (unrelated to the SEC investigation), (2) denial of regular parenting time to Husband until the eve of the temporary orders hearing in September 2018, (3) request for sole legal decision making authority, (4) refusal of Husband's settlement offer, (5) dispute of Husband's entitlement to share in her bonuses, (6) claim for an equalization payment for her car, and (7) ending mediation after half a day.

¶36          Wife contends that the conduct cited by the superior court was not unreasonable.  Because we have vacated the allocation of Wife's 2019 bonus, we cannot say that Wife's position on that issue was objectively unreasonable. *See In re Marriage of Williams*, 219 Ariz. 546,  549, ¶ 11 (App. 2008) (holding that the reasonableness of a party's position is evaluated by

11

an objective standard).  Though Wife's position on the allocation of the bonus was only one of the many positions that the superior court found unreasonable, we cannot determine how much weight the court placed on each particular finding.  Accordingly, we reverse the award of attorney's fees and remand for reconsideration.

## CONCLUSION

**¶37**        We vacate the order allocating Wife's 2019 bonus.  On remand, the court shall award the 2019 bonus to Wife as her separate property.  We reverse and remand for reconsideration the legal-decision-making award, the child-support award, and the award of attorney's fees. We affirm the decree in all other respects.

**¶38**        Both parties request an award of attorney's fees on appeal under A.R.S. § 25-324.  In the exercise of our discretion, we order that each party shall pay his or her own attorney's fees on appeal.  As the prevailing party, Wife is awarded her taxable costs on appeal, contingent upon her compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA