118 P.3d 43

**In re the Marriage of: William J. BREBAUGH, Petitioner–Appellant,**

v.

**Nancy L. (Brebaugh) DEANE, Respondent–Appellee.**

**No. 1 CA–CV 04–0237.**

Court of Appeals of Arizona, Division 1, Department B.

Aug. 23, 2005.

Raymond, Greer & Sassman, P.C., Phoe-
nix, By Leonard D. Greer, J. Douglas
McVay, Phoenix, for Petitioner–Appellant.

Fromm Smith & Gadow, P.C., Phoenix, By Stephen R. Smith, Sandra J. Fromm, for Respondent–Appellee.

## OPINION

PORTLEY, J.

¶ 1 We examine whether stock options that had not vested before the petition for dissolution was served can be divided as community property. Because we find that the trial court needs to determine whether the unvested stock options were compensation for past performance, incentives for future performance or some combination of both, we reverse that portion of the decree of dissolution and remand the matter to the trial court.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 William J. Brebaugh ("Husband") and Nancy L. Deane ("Wife") were divorced after thirty years of marriage. Husband is the vice president of enrollment at Apollo Group, Inc./University of Phoenix ("Apollo"). Wife teaches art in the Scottsdale School District. The parties were unable to resolve whether Husband's unvested stock options were community property. After their trial, the court determined the unvested stock options were community property and awarded Wife one-half of those options. Husband appealed and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

## DISCUSSION

¶ 3 Husband received blocks of stock options from his employer during the marriage. The parties agreed that stock options that had vested prior to the date the petition was served were community property. They also agreed that stock options he received after service were his separate property. They could not agree, however, whether the op-

tions he received during the marriage but could not be exercised until after service of the petition were community or separate property.

¶ 4 The trial court, after consideration of testimony, memoranda and proposed findings of fact and conclusions of law, noted that the issue was how any community interest in the unvested options should be determined. After noting that Arizona has not examined the issue, the trial court examined the "time rule" outlined in *In re Marriage of Hug*, 154 Cal.App.3d 780, 201 Cal.Rptr. 676 (1984), and rejected Husband's claim that the unvested options were intended as incentive for his future employment. It determined that Husband had failed to demonstrate by clear and convincing evidence that the options that had not vested before service of process were his sole and separate property.

¶ 5 On appeal, Husband contends that we should allocate the community and separate property interests in unvested stock options using a formula that favors the future efforts of the employee-spouse. *See generally In re Marriage of Nelson*, 177 Cal.App.3d 150, 222 Cal.Rptr. 790 (1986). Wife contends that there was insufficient evidence to suggest that the options were granted for Husband's future efforts. She argues that the options were compensation for work during the marriage and, therefore, are entirely community property. In the alternative, she contends that a time rule that emphasizes the employee's past efforts is the appropriate formula in this case. *See generally Hug*, 154 Cal. App.3d 780, 201 Cal.Rptr. 676. Because the issue is a question of law, we review it *de novo*. *Brink Elec. Constr. Co. v. Ariz. Dep't of Revenue*, 184 Ariz. 354, 358, 909 P.2d 421, 425 (App.1995).

¶ 6 Stock options are a form of compensation. *See In re Marriage of Robinson and Thiel*, 201 Ariz. 328, 332, ¶ 9, 35 P.3d 89, 93 (App.2001). "Property acquired by either spouse during marriage is presumed

---

1. In our separate Memorandum Decision, filed herewith, we affirmed that Wife is entitled to indefinite spousal maintenance, but remanded to the trial court to resolve the amount of monthly maintenance once it resolves the issue in this Opinion. We also affirmed that the vehicle Husband gave her was a gift in spite of an agreement to the contrary; and pursuant to Wife's concession, vacated the portion of the dissolution decree that awarded her a share of the condominium rentals.

to be community property, and the spouse seeking to overcome the presumption has the burden of establishing a separate character of the property by clear and convincing evidence." *Thomas v. Thomas,* 142 Ariz. 386, 392, 690 P.2d 105, 111 (App.1984). Property acquired after service of a petition for dissolution is considered separate property if the parties get divorced. *See* A.R.S. § 25–211 (2000).

¶ 7 In Arizona, the community has an interest in the property earned during the marriage. *See Van Loan v. Van Loan,* 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977) (holding that to the extent a spouse acquires unvested pension benefits from community efforts, that property right is divisible upon dissolution). However, compensation for a spouse's post-dissolution efforts is sole and separate property. *See* A.R.S. § 25–213(B) (Supp.2004); *In re Marriage of Kosko,* 125 Ariz. 517, 518, 611 P.2d 104, 105 ("any portion of a recovery which represents compensation for post-dissolution earnings of the . . . spouse is the separate property of that spouse"). As such, we hold that unvested stock options are analogous to pension plans.

¶ 8 Arizona courts have held that "pension rights, whether vested or non-vested, are community property insofar as the rights were acquired during marriage." *Johnson v. Johnson,* 131 Ariz. 38, 41, 638 P.2d 705, 708 (1981) (footnotes omitted); *accord Van Loan,* 116 Ariz. at 274, 569 P.2d at 216. Other jurisdictions also consider unvested stock options analogous to unvested pension benefits in determining the community interest. *See, e.g., Garcia v. Mayer,* 122 N.M. 57, 920 P.2d 522, 525, ¶¶ 14–15 (Ct.App. 1996); *Hug,* 201 Cal.Rptr. at 681, 684–85; *MacAleer v. MacAleer,* 725 A.2d 829, 833, ¶ 9 (Pa.Super.Ct.1999). Thus, if the stock options are intended as compensation for Husband's efforts during marriage, they are community property. If, however, the options are, in part, intended to induce future employment, then, to that extent, they are Husband's separate property.

¶ 9 Most jurisdictions have applied a time rule for determining the community's interest in unvested stock options. *See, e.g.,*

*Baccanti v. Morton,* 434 Mass. 787, 752 N.E.2d 718, 727–28 (2001) (citing cases); *Garcia,* 920 P.2d at 525, ¶ 16 (citing cases). In determining whether the community has an interest in the unvested stock options granted during the marriage, the court must determine the extent to which the stock options were compensation for a spouse's effort during the marriage. In making that determination, the court must consider the employer's purpose for awarding the stock options.

¶ 10 As the trial court recognized, the purpose of stock options varies widely. A company may award stock options as compensation for past services or performance, as incentive to remain with the company, or to garner favorable tax consequences. Therefore, we agree that "[t]rial courts should be vested with broad discretion to fashion approaches which will achieve the most equitable results under the facts of each case." *Hug,* 201 Cal.Rptr. at 685.

¶ 11 Here, the trial court concluded that Husband's stock options compensated him for work performed during the marriage and rejected his claim that the options were solely intended to encourage him to remain with Apollo. It concluded, based on the date the options were granted, that all options granted during the marriage, whether vested or not at the time of service, were community property. The stock option agreements do not, however, appear to support that conclusion.

¶ 12 The stock option agreements provide that the options were intended to encourage key employees to remain and to enhance Apollo's ability to attract new employees "by providing an opportunity to have a proprietary interest in the success of [Apollo,]" and as an incentive to "focus on [its] long-term growth." The agreements provided that the options could vest on an accelerated basis if Apollo reached certain profit goals and the stock price reached a designated amount. Alternatively, and regardless of Apollo's performance, twenty-five percent of the options would vest annually beginning the year after the options were awarded.

¶ 13 Apollo's chief financial officer, Kenda Gonzalez, moreover, testified that stock op-

tions generally are granted as an incentive for employees to remain with a company, to think like stockholders and thereby consider the company's long-term benefits. She also testified that Apollo grants options based on the employee's level of responsibility within the company, not for past performance. Husband's expert accountant testified that Apollo's stock options were an inducement to keep him with the company and not to reward him for past performance.

¶ 14 Wife's expert accountant testified that Husband's stock options were compensation for past efforts. She opined that because Apollo's enrollment had increased significantly during Husband's tenure as vice president of enrollment, which increased the gross income for the corporation, his salary and bonuses alone were inadequate compensation. Husband admitted that he would not stay with the company if he only received his salary and bonuses. Husband received regular merit raises and bonuses during his employment, but did not receive stock options on a regular basis.

¶ 15 If the stock options were intended solely as compensation for work performed or deferred compensation, the trial court's characterization would be correct. It does not appear, however, that the court considered the fact that the agreements specifically stated that the options were intended to encourage key employees to remain with Apollo and enhance Apollo's ability to attract new employees. The language of the agreements sufficiently rebuts the presumption that the options granted during the marriage are entirely community property. *See Thomas,* 142 Ariz. at 392, 690 P.2d at 111 (noting that property acquired during marriage is presumed to be community property absent clear and convincing evidence to the contrary).

¶ 16 We have found only two jurisdictions that have held that unvested stock options were entirely community property. In *Bodin v. Bodin,* a Texas appellate court affirmed the trial court's ruling that unvested stock options, like military retirement benefits, were a community asset because they

constituted a contingent interest in property earned during the marriage. 955 S.W.2d 380, 381 (Tex.Ct.App.1997). The *Bodin* court, however, did not analyze whether the unvested stock options were for past performance or incentive for future performance, or whether that purpose might limit the community's interest in the stock options to the extent the unvested options were intended as compensation for post-divorce services. *Id.* Although it cited *Hug* and other cases which considered those questions, it did not analyze them. *Id.*

¶ 17 The other Texas cases that treated unvested stock options as entirely community property are distinguishable. In *Kline v. Kline,* the court found that because the stock option agreement indicated that the unvested options were for past performance they were entirely community property. 17 S.W.3d 445, 446–47 (Tex.Ct.App.2000). In *Charriere v. Charriere,* the court concluded that all the stock options were community property because the employee spouse could have exercised the options during the marriage. 7 S.W.3d 217, 220 (Tex.Ct.App.1999). Those cases are not comparable to the stock options Husband received but could not exercise until sometime after the petition was served on him.

¶ 18 In Wisconsin, the court of appeals presumed that unvested stock options were community property. *See Chen v. Chen,* 142 Wis.2d 7, 416 N.W.2d 661, 665 (Ct.App.1987). *Chen* held that the employee spouse failed to rebut the presumption because the stock option agreement stated that the options were intended to reward past contributions to the employer and to induce continued employment. *Id.* The court stated that "it would be mere conjecture to attempt to separate the portion of the net profits attributable to [the employee spouse's] post-divorce efforts" because the increase in value was due, in part, "to market forces and innumerable other variables." *Id.*[2]

¶ 19 Here, if the trial court concludes, after reviewing the agreements, that the unvested stock options were, even in part, incentives for future performance, it should

<hr>

2. We were unable to locate another case following this rationale.

analyze the issue under *Hug* and *Nelson*, and use a time rule to determine the community and separate property interests in the unvested stock options. Our conclusion is supported by the fact that a similar fractional formula is used to determine the community's interest in unvested pension or retirement plans. *See Johnson*, 131 Ariz. at 41 n. 4, 638 P.2d at 708 n. 4; *Van Loan*, 116 Ariz. at 273, 569 P.2d at 215. When properly applied, the time rules equitably allocate the portion of the stock options attributable to future services.

¶ 20 A majority of courts that have examined whether unvested stock options that vest after separation or service of the petition have accepted two primary time-rule formulas for allocating unvested stock options. The first is the *Hug* formula which is most appropriate for stock options that are granted for past services but cannot be exercised until after the separation or service of process because the formula gives more weight to the employee's entire tenure with the employer during marriage. *See Garcia*, 920 P.2d at 526, ¶ 20; *Nelson*, 222 Cal.Rptr. at 793 n. 3. Under the *Hug* formula,

> the number of options determined to be community [is] the product of a fraction in which the numerator [is] the period in months from the commencement of the spouse's tenure with his employer to the date of the couple's separation, and the denominator [is] the period in months between commencement of employment and the date when each group of options first bec[o]me[s] exercisable. This fraction [is] then multiplied by the number of shares of stock which c[an] be purchased with each block of options, yielding the community figure.

*Nelson*, 222 Cal.Rptr. at 793 (*citing Hug*, 201 Cal.Rptr. at 678).

¶ 21 Conversely, the *Nelson* formula is more appropriate for stock options which are intended to compensate an employee for future efforts. The *Nelson* formula assumes that the period of employment prior to the granting of the option did not contribute to the employee earning the stock options and should not be included in the time used to calculate the community's interest in the op-

tions. *See id.* at 793 n. 3. In *Nelson*, the numerator of the fraction is "the number of months from the date of grant of each block of options to the date of the couple's separation, while the denominator [is] the period from the time of each grant to its date of exercisability." *Id.* at 793. This fraction is also multiplied by the number of shares to be purchased to determine the community figure. *Id.*

¶ 22 Other courts have used other methods of valuation. *See, e.g., Batra v. Batra*, 135 Idaho 388, 17 P.3d 889, 893–94 (Ct.App.2001) (applying formula calculating community interest on a per-block of stock basis, as a fraction: "the number of days of the marriage during the year of vesting of the [block] of the stock option in question over the number of days in a year. The fraction is then converted into a percentage—the community's interest in the stock option in that particular [block]" and limiting the community's interest to blocks that vest in whole or in part during the marriage). *See DeJesus v. DeJesus*, 90 N.Y.2d 643, 665 N.Y.S.2d 36, 687 N.E.2d 1319, 1324 (1997) (applying a combination of *Hug* and *Nelson* time rules to portions of stock plans depending on their purpose); *In re Marriage of Short*, 125 Wash.2d 865, 890 P.2d 12, 16–17 (1995) (court determines amount of stock options granted for past, present, or future service; past and present options awarded to community; options for future services subject to time rule to be applied only to the first stock option to vest after the date the community ends).

¶ 23 "The valuation of assets is a factual determination that must be based on the facts and circumstances of each case." *Kelsey v. Kelsey*, 186 Ariz. 49, 51, 918 P.2d 1067, 1069 (App.1996). As noted in *Hug*, "since the purposes underlying stock options differ, reference to the facts of each particular case must be made to reveal the features and implications of a particular employee stock option." 201 Cal.Rptr. at 679. Because the nature of stock options differ and trial courts will have to resolve options on an ad hoc basis, we decline to adopt a single formula for valuing stock options upon dissolution.

¶ 24 Although Husband contends that his options were incentive for future perform-

ance and Wife contends they were for past performance, we will leave it to the trial court to determine whether the disputed options were incentives for the future, compensation for past performance, or some combination of both. Once it makes that determination, it can decide which time-rule formula is most appropriate.

¶ 25 The primary factor the trial court should consider is the employer's intent in awarding the options. *See e.g., Ruberg v. Ruberg,* 858 So.2d 1147, 1154 (Fla.Dist.Ct. App.2003) ("the expressed purpose of the employer is an important factor in determining" whether an option was granted for past, present, or future services); *Hopfer v. Hopfer,* 59 Conn.App. 452, 757 A.2d 673, 676 (2000) (purpose of option grant must be considered); *MacAleer v. MacAleer,* 725 A.2d at 833 ("Because a stock option may be awarded for a variety of purposes, including compensation for past or present services or an incentive for future services, the purpose(s) for which the option was granted must be considered."). In determining the employer's intent, the court should consider whether there is any expressly stated purpose in the employment agreement or stock option agreement, *see Ruberg,* 858 So.2d at 1155; *Hug,* 154 Cal.App.3d at 786–87, 201 Cal.Rptr. 676, and the adequacy of other compensation or the compensation scheme as a whole, *see Hug,* 154 Cal.App.3d at 790, 201 Cal.Rptr. 676 (stock options may be in lieu of higher current compensation or as bonus); *DeJesus v. DeJesus,* 90 N.Y.2d 643, 665 N.Y.S.2d 36, 687 N.E.2d 1319, 1324 (App.1997). If the employer's intent in granting the unvested options was to compensate the employee for past or current service, the options are community property and the *Hug* formula is applicable. If, however, the intent was to provide an incentive for the employee's future performance, the *Nelson* formula should be used to allocate the unvested options.

¶ 26 Accordingly, we reverse the portion of the decree dividing the unvested stock options and remand for further findings consistent with this opinion.

¶ 27 Both parties request their attorneys' fees and costs on appeal pursuant to A.R.S. § 25–324 (2000) and Arizona Rule of Civil Appellate Procedure 21. Neither party has taken an unreasonable position on appeal, and both parties have significant financial resources, considering all sources. Consequently, we deny both requests for fees and costs on appeal.

## CONCLUSION

¶ 28 We reverse the conclusion that all unvested stock options granted during marriage but vesting after the dissolution petition was served are community property, and the division of those options. We remand so that the trial court can consider the reasons Husband received the unvested options and the most appropriate time-rule formula, if any, to divide them. Each party shall bear his or her own attorneys' fees and costs on appeal.

HALL and WEISBERG, JJ., concurring.

