NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

CARMEN JESSICA VASQUEZ, *Petitioner/Appellant*,

*v.*

ANTONIO L. VASQUEZ, JR., *Respondent/Appellee*.

No. 1 CA-CV 21-0654 FC
FILED 9-6-2022

---

Appeal from the Superior Court in Maricopa County
No.  FC2017-094025
FC2018-095321
The Honorable Marvin L. Davis, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

---

COUNSEL

Saldivar & Associates, PLLC, Phoenix
By Maria David
*Counsel for Petitioner/Appellant*

Byrl R. Lane, PC, Phoenix
By Byrl Raymond Lane
*Co-Counsel for Respondent/Appellee*

Alexander R. Arpad Attorney at Law, Phoenix
By Alexander R. Arpad
*Co-Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Angela K. Paton and Judge Peter B. Swann joined.

---

**C R U Z**, Judge:

¶1          Carmen Jessica Vasquez ("Mother") challenges portions of the decree of dissolution between her and Antonio L. Vasquez, Jr. ("Father").  For the following reasons, we affirm in part and vacate and remand in part.

## FACTUAL AND PROCEDURAL HISTORY

¶2          The parties were married in 1992.  Mother worked sporadically throughout the marriage and was the primary caregiver for the children, while Father was the main financial support for the family. Because of Mother's poor credit history, in 2004 Father purchased the family residence in his name only and Mother signed a disclaimer deed waiving any interest in the property.

¶3          In June 2017, Mother filed a petition for dissolution of marriage.  Of the five children born during their marriage, two were still minors at the time the dissolution proceedings began.

¶4          A few months after filing the dissolution petition, Mother filed a motion for temporary orders, requesting in relevant part, court orders regarding the marital home, parenting time, and child support. Mother alleged Father suffered from alcohol abuse and was behaving irrationally, including texting his children he was suicidal.  She requested he be awarded supervised visitation.  She additionally requested she be awarded exclusive use of the marital home while Father continued to be responsible for the mortgage payments.

¶5          The parties subsequently reached an agreement pursuant to Arizona Rule of Family Law Procedure ("ARFLP") 69 ("the 2017 temporary orders"), whereby they would exercise equal legal decision-making authority over the two minor children and Father would have parenting time for several hours on Tuesday and Wednesday, as well as every other weekend.  Father was not permitted to consume alcohol during his parenting time, and he was required to take medication and participate in

counseling as recommended by his physician. Father was also ordered to pay $900 in monthly child support. The parties were to equally split the costs of unreimbursed medical expenses. Mother was given exclusive use of the marital home and Father was responsible for mortgage payments.

¶6         In August 2018, Mother filed an expedited motion for temporary orders. As relevant here, Mother requested orders regarding parenting time, legal decision making, child support, spousal maintenance, the marital home, and attorneys' fees. Mother again alleged Father abused alcohol and threatened suicide to the parties' children. She also contended Father neglected to make mortgage payments on the marital home for nearly a year, and it was scheduled for a foreclosure auction unless a balance of about $9,000 was paid in full.

¶7         In September 2018, the court issued its temporary orders ("the 2018 temporary orders"), awarding Mother sole legal decision-making authority. Father was not allowed parenting time or communication with the two minor children until he completed mental health treatment. Father was ordered to pay $695 in monthly child support and $1,000 in monthly spousal maintenance, and an income withholding order was issued. The superior court granted Mother a $3,000 interim award of attorneys' fees, which would begin accruing interest if not paid in full by December 2018. Finally, the court ordered Father to pay the balance of the mortgage arrearage or sign a quitclaim deed to Mother in two weeks' time, or a civil arrest warrant would be issued. All other prior temporary orders from the 2017 agreement remained in effect.

¶8         Although Father initially failed to pay the mortgage balance, and a civil warrant was issued for his arrest, he eventually paid the amount due and the court quashed the warrant. Father did not pay the attorneys' fee award to Mother.

¶9         In September 2021, a trial was held. By this time, only one of the parties' children was a minor. Mother sought sole legal decision-making authority and parenting time, as well as $1,200 in monthly child support and $1,500 in monthly spousal maintenance. Mother argued the marital residence should be treated by the court as community property and that she was entitled to a 50% interest. Father argued he was entitled to equal legal decision-making authority, equal parenting time, a child support order consistent with the Arizona Child Support Guidelines, Arizona Revised Statutes ("A.R.S.") section 25-320 app. (2018)

("Guidelines"),[1] and that neither party was entitled to spousal support. Finally, he argued the marital home was his separate property, although he recognized Mother was entitled to an equitable lien.

¶10          After trial, the court entered a final decree awarding joint legal decision-making authority to the parties over the parties' remaining minor child.  Father was awarded supervised parenting time and ordered to pay monthly child support of $962 pursuant to the Guidelines.  The superior court additionally found Mother was entitled to spousal maintenance and awarded her $1,000 per month for five years.  The superior court noted Mother signed a disclaimer deed to the marital home and awarded it to Father as his sole and separate property.  The superior court found Mother had "waived any rights/interest in the [marital home] and failed to meet her burden in establishing any community interest claim by not providing the required information to perform the proper analysis."

¶11          Mother timely appealed.  We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

I.     Community Lien

¶12          Mother argues the court erred when it awarded the house to Father as his separate property and declined to award her a community lien.  We review de novo the legal question of whether property should be classified as community or separate. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007).  The existence and value of an equitable lien presents mixed questions of fact and law. *Valento v. Valento*, 225 Ariz. 477, 481, ¶ 11 (App. 2010).  This court defers to the superior court's factual findings unless clearly erroneous or unsupported by any credible evidence but draws its own legal conclusions from those facts. *Id.*

¶13          Property acquired during marriage is presumed to be community property, and the spouse seeking to rebut that presumption must prove by clear and convincing evidence that the property is separate. A.R.S. § 25-211(A); *Brebaugh v. Deane*, 211 Ariz. 95, 97-98, ¶ 6 (App. 2005). A signed disclaimer deed provides this proof and, absent fraud or mistake,

---

[1]      The 2018 version of the Arizona Child Support Guidelines was in effect at the time the superior court entered the final decree.  Accordingly, we apply that version to our analysis. *See Pearson v. Pearson*, 190 Ariz. 231, 233 n.1 (App. 1997).

rebuts the community presumption. *Bell-Kilbourn*, 216 Ariz. at 524, ¶¶ 10-11. Here, Mother signed a disclaimer deed, and she does not challenge its validity. Accordingly, the evidence supports a finding that the marital home is Father's separate property.

**¶14** "A separate property residence remains separate property even if the community contributes funds and uses the residence as a family home." *Femiano v. Maust*, 248 Ariz. 613, 617, ¶ 17 (App. 2020). However, as Mother recognizes, "capital contributions made with community funds create a community interest in the separate asset that may be vindicated through an equitable lien." *Id.* Here, the undisputed evidence shows that the property was used as the family home and community funds were used to pay the mortgage and make improvements on the property. Aside from Father's argument that Mother waived her claim to a lien, he concedes that she would otherwise have been entitled to a community lien on the property. There is no evidence that Father had any earnings which could be characterized as separate property. Since there is a presumption that property earned during the marriage is community property, which Father has not rebutted, his income used to pay the mortgage are community contributions. *See Brebaugh*, 211 Ariz. at 97-98, ¶ 6. Thus, the community is entitled to an equitable lien.

**¶15** Father argues that Mother has waived any interest in the home by failing to raise this argument at trial. But in her 2019 Resolution Management Conference statement, Mother raised the issue of a community lien. And, at trial, Mother testified that the home was an asset to be divided. Father knew the calculation of the equitable lien was at issue, and in his pretrial statement he calculated the value of Mother's community lien at $35,371. We therefore decline to find waiver. *See Nold v. Nold*, 232 Ariz. 270, 273-74, ¶¶ 10, 20 (App. 2013) (waiver is a discretionary doctrine, not an "unalterable rule," and the superior court has an "obligation to equitably divide" community property).

**¶16** Accordingly, we remand to the superior court to conduct further proceedings to determine the value of the community lien and to make any other equitable adjustments to the decree if needed.

II. Child Support

**¶17** Mother argues the superior court erred in its determination of the child support award. We generally review child support awards for an abuse of discretion. *Kelsey v. Kelsey*, 186 Ariz. 49, 53 (App. 1996). An abuse of discretion occurs when the superior court commits an error of law, or

when the record, viewed in the light most favorable to upholding the court's conclusions, is devoid of competent evidence. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009). We review de novo the superior court's interpretation of the Guidelines. *Clay v. Clay*, 208 Ariz. 200, 202, ¶ 5 (App. 2004).

**¶18** The court ordered Father to pay $962 in monthly child support pursuant to the Guidelines. Mother argues the court erred in failing to award an upward deviation of child support in the amount of $1,200. In order to grant an upward deviation, the superior court must find that "[a]pplication of the guidelines is inappropriate or unjust in the particular case," and it is in the best interests of the children. A.R.S. § 25-320 app. § 20(A). Mother concedes that her failure to request specific findings of fact pursuant to ARFLP 82 "waived the argument on appeal that the superior court was obligated to explain why a deviation was not warranted." *Nia v. Nia*, 242 Ariz. 419, 425, ¶ 26 (App. 2017). When, as here, neither party requested findings of fact or conclusions of law, we presume that the court "found every fact necessary to support the judgment." *Neal v. Neal*, 116 Ariz. 590, 592 (1977).

**¶19** Mother contends an upward deviation is appropriate because she is currently unable to work, and her only form of income is child support and spousal maintenance. "In determining child support, the superior court must consider the reasonable needs of the children in light of the parents' resources." *Nash v. Nash*, 232 Ariz. 473, 479, ¶ 23 (App. 2013). Mother has failed to demonstrate that the child's needs are not currently met with the child support award as prescribed by the Guidelines. As Mother recognizes, the parties "did not have an extravagant standard of living during the marriage," and there is no evidence Father has significant financial resources such that application of the Guidelines would be "inappropriate or unjust." A.R.S. § 25-320 app. § 20(A)(1). Mother is essentially asking this court to reweigh the evidence, but we must give due regard to the superior court's ruling, and we do not reweigh evidence on appeal. *See Hurd*, 223 Ariz. at 52, ¶ 16. The court did not abuse its discretion in declining to award an upward deviation of Father's child support obligation.

**¶20** Mother also argues the court erred in calculating Father's income. The court attributed to Father an income of $66,144. Mother argues Father's overtime and bonuses should be considered part of his income, and he should be attributed no less than the salary he earned during 2020: $87,940 (a significant portion of which was from overtime work). Father testified that he was starting a new job with a smaller company, and so he

could no longer work overtime like he did in prior years. Mother claims Father is trying to evade his support obligations by starting a job with lower income, but his base salary is essentially the same—$30.50 per hour as opposed to $31.80 per hour. Even if Father could still work overtime in his new job, a contested issue left to the determination of the superior court, that court is not obligated to include overtime pay as part of a father's income for child support calculation purposes; the Guidelines provide that the court *may* consider overtime pay if it is historically earned, but it is not mandated to do so. A.R.S. § 25-320 app. § 5(A) ("Generally, the court should not attribute income greater than what would have been earned from full-time employment. Each parent should have the choice of working additional hours through overtime or at a second job without increasing the child support award."). We find no error.

¶21        Finally, Mother contends the court erred in failing to credit her for $280 in monthly educational expenses when calculating the child support obligation. Mother briefly testified that she had to pay $30 per month for a laptop and another $250 per month for internet for their son's speech therapy. However, Mother did not expressly request the court credit her this amount in special educational expenses, nor did she include this amount on her proposed child support worksheets. Under the Guidelines, the court is under no obligation to credit extra educational expenses. A.R.S. § 25-320 app. § 9(B)(2) (the court "*[m]ay* add to the Basic Child Support Obligation amounts for" education expenses) (emphasis added). Further, Mother provided no evidence to substantiate the existence of these expenses. *See Hurd*, 223 Ariz. at 52, ¶ 16 (credibility determinations are within the province of the superior court). The superior court did not err in failing to credit Mother for these educational expenses.

III.    Spousal Maintenance

¶22        Mother argues the superior court erred in the amount and duration of the spousal maintenance award. We review the superior court's award of spousal maintenance for an abuse of discretion and will affirm if there is any reasonable evidence to support it. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 348, ¶ 14 (App. 1998).

¶23        Once the superior court determines a spouse meets the statutory requirements for maintenance in A.R.S. § 25-319(A), the court must then consider the factors in A.R.S. § 25-319(B) to determine a maintenance award that is "in an amount and for a period of time as the court deems just." A.R.S. § 25-319(B).

¶24 The superior court awarded Mother $1,000 in monthly spousal support for a period of five years. Mother contends the court erred in failing to award her the requested $1,500 per month. In the decree, the superior court expressly considered and weighed all the factors in A.R.S. § 25-319(B). Mother contends the court did not give enough weight to her financial needs, Father's earning capabilities, Mother's contributions to Father's career, and the duration of the marriage. Mother is asking us to reweigh the factors and evidence, but again, we do not reweigh evidence on appeal. *See Hurd*, 223 Ariz. at 52, ¶ 16.

¶25 Mother also argues the court erred in failing to award her spousal maintenance for an indefinite period. Mother contends she is unable to be self-sufficient through employment because her current health condition prevents her from working. The superior court did note that Mother was currently unable to work because of her physical condition. However, Mother did not argue that she is permanently disabled, and she did not provide evidence that she would be unable to work in the future. The superior court awarded Mother five years of spousal support to allow her time "to secure additional employment and arrange for any training [she] need[s] to secure appropriate employment." The award is modifiable and keeps open the possibility for Mother to seek modification of the award should her medical conditions persist. The evidence supports the court's judgment. We find no error. The superior court did not abuse its discretion in determining the amount and duration of the spousal support award.

IV. Temporary Orders

¶26 Mother argues the superior court erred by failing to include in the final judgment an interim attorneys' fee award, support arrears, and reimbursement for various expenses in order to satisfy the 2017 and 2018 temporary orders. "Temporary orders signed by the court and filed by the clerk are enforceable as final orders but terminate and are unenforceable upon dismissal of the action, or following entry of a final decree, judgment, or order, unless that final decree, judgment, or order provides otherwise." Ariz. R. Fam. Law P. 47(j)(1); *see also* A.R.S. § 25-315(F)(4).

A. $3,000 Attorneys' Fee Award

¶27 First, Mother argues the court erred by failing to include in the final decree the $3,000 attorneys' fees plus interest awarded to Mother in the 2018 temporary orders. Father concedes he has not yet complied with this order and intended to pay the attorneys' fee award with proceeds from community property in Mother's possession.

¶28 The attorneys' fee award within the temporary orders was never incorporated into the final judgment. Without incorporation into the final judgment, upon entry of the decree, those orders would terminate and become unenforceable. A.R.S. § 25-315(F)(4) ("A temporary order or preliminary injunction . . . [t]erminates when the final decree is entered or when the petition for dissolution, legal separation or annulment is dismissed."). Father argues the attorneys' fee award, while admittedly made in the context of a temporary order, was a "discrete award embodied in a signed judgment rather than a temporary order." However, there is no language in the 2018 temporary orders or the final decree that indicate any of the rulings within the 2018 temporary order would not terminate upon entry of the final decree. *See* Ariz. R. Fam. Law P. 47(j)(1).

¶29 Mother timely raised Father's noncompliance with the attorneys' fee award at trial, and the court failed to address the issue in the decree. Father does not dispute that he has failed to pay Mother the attorneys' fee award plus interest. We therefore remand for the court to amend the decree to account for the $3,000 attorneys' fee award plus interest owed to Mother.

B. Support Arrears

¶30 Mother also argues the court failed to enter final orders regarding support arrearages from Father's failure to pay support under the 2017 and 2018 temporary orders.

¶31 However, in her pretrial statement, Mother argued that Father only owed arrearages between May 2017 and October 2017 in the amount of $3,762.39. But Mother did not file her petition for dissolution until June 2017, and child support and spousal maintenance were not ordered until October 2017. Father was not ordered to pay support between May and October 2017, and so he cannot owe any arrearages during this time frame.

¶32 Insofar as Mother alleges Father has failed to pay spousal or child support since October 2017, Mother failed to properly raise this issue before the court. Mother claims she testified at trial that Father has complied with "none" of the 2017 temporary orders. But aside from this very vague testimony, Mother did not clearly raise the issue of support arrearages, and regardless, she has provided no evidence or calculation of arrears allegedly owed by Father. Following both the 2017 and 2018 temporary orders, income withholding orders were issued, and it appears support has been automatically withheld from Father's paychecks. In the

four years between the court's temporary orders for support and the final decree, Mother never filed a notice or motion arguing Father was not paying his support obligations. *See Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 15 (App. 2004) (arguments raised for the first time on appeal generally deemed waived); *Sholes v. Fernando*, 228 Ariz. 455, 460, ¶ 14 n.3 (App. 2011) (arguments that are unsupported by citation to the record are deemed waived). We find no error.

## C. Reimbursement for Medical and Educational Expenses

**¶33** Finally, Mother argues she is entitled to reimbursement for medical and educational expenses pursuant to the 2017 and 2018 temporary orders. However, Mother fails to point to any language in these court orders that expressly required the parties to equally pay for educational expenses. The superior court did not err in failing to require reimbursement for these education expenses.

**¶34** Mother additionally argues the court failed to enter final orders regarding reimbursement for a $50 medical expense. The 2017 and 2018 orders did require Father to pay half of uncovered medical expenses. However, the only evidence Mother provides of uncovered medical expenses is a billing summary sheet that indicates she made a $50 payment for one of the children's dentist appointments in July 2017. The temporary orders were not in effect until September 2017, and so the parties were not yet ordered to equally pay for medical expenses when Mother made this $50 payment. The superior court did not err in denying Mother's request for reimbursement.

## CONCLUSION

**¶35** For the foregoing reasons, we vacate in part and remand for further proceedings for the superior court to determine the value of the community lien. We also remand for the court to include in the final decree the $3,000 interim attorneys' fee award plus interest. We affirm the final decree in all other respects.

**¶36** Both parties request their attorneys' fees and costs on appeal. We have considered the relative financial resources of the parties and the reasonableness of the positions asserted on appeal. *In re Marriage of Williams*, 219 Ariz. 546, 550, ¶ 15 (App. 2008). In the exercise of our discretion, we grant Mother a partial award of attorneys' fees in addition to

her costs on appeal, upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA