NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

SANTOSH KUMBERA, *Petitioner/Appellee*,

*v.*

SUNDARI MANICKAM, *Respondent/Appellant*.

No. 1 CA-CV 21-0661 FC
FILED 01-30-2025

Appeal from the Superior Court in Maricopa County
No. FC2019-095961
The Honorable David E. McDowell, Judge

## AFFIRMED IN PART; VACATED AND REMANDED IN PART

COUNSEL

Walneck Law, Scottsdale
By Edward J. Walneck
*Counsel for Petitioner/Appellee*

Pangerl Law Firm, P.L.L.C., Phoenix
By Regina M. Pangerl
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Anni Hill Foster delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Kent E. Cattani joined.

---

**F O S T E R**, Judge:

**¶1**　　　　Sundari Manickam ("Mother") appeals the superior court's decree of dissolution ("Decree") dissolving her marriage to Santosh Kumbera ("Father") and other post-decree rulings. Mother challenges the superior court's orders related to the distribution of Mother's stocks and retirement accounts and to expenditures on the marital residence. She also challenges legal decision making orders relating to their minor child ("Child"). For the following reasons, this Court vacates in part and affirms in part.

**FACTS AND PROCEDURAL HISTORY**

**¶2**　　　　Mother and Father were married in 2006 and filed for dissolution in 2019. Mother began working for Microchip Technology Incorporated ("Microchip") in 1999. As part of her employment compensation, Mother received restricted stock units ("RSUs"). RSUs were given to entice employees to remain with Microchip and had a delayed vesting schedule. If Mother were to leave the company before the RSUs fully vested, they would revert to the company.

**¶3**　　　　Before marriage, Mother obtained approximately 544 RSUs. These RSUs did not vest until after she was married. After the couple married, Mother obtained another 5,147 RSUs. As of the date of service of the dissolution, 3,799 units had vested and 1,348 had not.

**¶4**　　　　Additional benefits of Mother's employment included access to employee stock purchase plan ("ESPP") shares and participation in 401(k) retirement savings accounts. She purchased 3,363 ESPP shares of Microchip stock during her employment, and she contributed to the two 401(k) accounts.

**¶5**　　　　During the marriage the parties also started an Amway business that was profitable, contributing income to the community estate.

¶6            The couple owned their marital residence outright. Mother voluntarily left the residence following a domestic violence altercation with Father in April 2018. Father lived in the house but was not granted exclusive possession by the court until temporary orders were entered in December 2019. Both parties expended money to maintain the house during the proceedings: paying homeowners' association fees, maintenance costs, homeowner's insurance and taxes.

¶7            The parties had one child together. Mother requested sole legal decision making and less than equal parenting time for Father, while Father requested joint legal decision making and equal parenting time. Mother asserted that there was a significant history of domestic violence perpetrated by Father, preventing Father from having joint legal decision making or equal parenting time. In preparation for trial, the parties hired Dr. Branton, a behavioral health professional, to provide legal decision making and parenting time recommendations. Dr. Branton concluded there was not significant domestic violence that would have any bearing on Father's ability to parent. Mother disagreed and requested that Dr. Branton be ordered to refund the fees earned, claiming he violated court rules. She also hired another expert to rebut Dr. Branton's findings.

¶8            The court found Father had committed an act of domestic violence but found that pursuant to Arizona Revised Statute § 25-403.03(E) he rebutted the statutory presumption against joint legal decision by completing domestic violence courses and parenting classes. Based on Dr. Branton's recommendations and there being no presumption against joint legal decision making, the court ordered joint legal decision making for Child. The court also ordered Mother to pay 75% of Dr. Branton's fees.

¶9            The court encouraged the parties to appoint a parenting coordinator to help them communicate. The court warned that a failure to do so could affect future modification actions should they arise. The court also limited communication between the parties, including by ordering the parties not to criticize the other parent in Child's presence.

¶10            Both parties requested attorneys' fees—each claiming the other took unreasonable positions, while Father also pointed to a disparity of income. The court concluded that both parties took unreasonable positions but found a financial disparity between the parties. The court ordered Mother to pay $48,000 of Father's attorneys' fees.

¶11 Mother timely appealed the superior court's orders after a final ruling on post-decree motions. This Court has jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

### I. The court erred in classifying the 401(k) as community assets.

¶12 Mother contends the superior court erred by classifying her 401(k) as community property and in dividing the parties' other retirement accounts. Father counters that Mother failed to provide ample evidence as to the value of her separate property in the 401(k) accounts.

¶13 In dissolution proceedings, "property acquires its character as community or separate depending upon the marriage status of its owner at the time of acquisition." *Stock v. Stock*, 250 Ariz. 352, 355, ¶ 10 (App. 2020) (quotation omitted); *accord* A.R.S. §§ 25-211, -213. "[I]t is well settled in Arizona and elsewhere that pension rights, whether vested or non-vested, are community property insofar as the rights were acquired *during* marriage, and are subject to equitable division upon divorce." *Johnson v. Johnson*, 131 Ariz. 38, 41 (1981) (emphasis added) (footnotes omitted). The date of acquisition is a question of fact, and the party asserting that fact has the burden of proving its truth. *See Woerth v. City of Flagstaff,* 167 Ariz. 412, 419 (App. 1990) ("Generally, the party asserting a claim for relief has the burden of proving the facts essential to [the] claim."). Thus, the court must determine the classification of property before seeking an equitable division of community property and apportioning assets and obligations between the parties. A.R.S. § 25-318(A), (B); *Neal v. Neal*, 116 Ariz. 590, 593 (1977) ("Regardless of its final award, the court must recognize the existence of the separate property."). This Court reviews the superior court's classification of property *de novo* but reviews the court's distribution of property for an abuse of discretion. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007).

¶14 The superior court found that "both parties contributed to retirement accounts during the marriage" but that "neither party submitted sufficient evidence to this [c]ourt to determine the value of the retirement accounts . . . or each party's respective share of the other party's account(s)." While a party "could not sustain his burden by relying upon mere speculation or insubstantial doubt regarding the material facts," *Woerth*, 167 Ariz. at 419 (cleaned up), here, the record reflects that Mother began employment in 1999 but was not married until 2006. Mother testified that she contributed to the 401(k) accounts before marriage and that she

continued to contribute to those accounts during the marriage. Father did not dispute that Mother was entitled to her separate property portion of the accounts and testified that he was only asking for the community property portion of the 401(k). But the court found that "AS A MATTER OF LAW these retirement accounts represent community assets and are subject to equitable division." In so doing, the court abused its discretion. Accordingly, the superior court's classification of the 401(k) accounts as community property is vacated and remanded for a determination as to the portions of the 401(k) accounts that are separate property and the value of that separate property before engaging in the division of the community property portion of the accounts. *See Proffit v. Proffit*, 105 Ariz. 222, 224 (1969) (a court "has no authority to compel either party to divest himself or herself of Title to separate property").

## II.     The court was not required to apply the present case value method in dividing Mother's retirement accounts.

¶15        Mother contends that the superior court erred in valuing the retirement accounts because it failed to use the present cash value method. Father asserts that the superior court is not limited to a particular valuation method and that Mother failed to present sufficient evidence of the present cash value of the accounts.

¶16        A trial court is not limited to the present cash value method for valuing a retirement account when dividing community assets. *Hoobler v. Hoobler*, 254 Ariz. 130, 138, ¶¶ 15–16 (App. 2022). "[T]he superior court has wide discretion" when selecting a valuation date for community property, but the resulting outcome must be fair and equitable. *Meister v. Meister*, 252 Ariz. 391, 397, ¶ 18 (App. 2021). Error does not result simply because a court chose one calculation method over another. The superior court had discretion regarding which method to employ in valuing the retirement accounts and did not abuse that discretion here. But, because this Court is remanding for a determination of Mother's separate property interests, the superior court may revisit the calculation method in its discretion when determining the value of the community's interest in the retirement accounts.

## III.     The court erred in apportioning the RSUs.

¶17        Mother next contends the superior court abused its discretion in its classification and allocation of the RSUs, including by failing to consider the tax implications of the allocation. The determination of a

community interest in unvested stock options is reviewed *de novo*. *See Brebaugh v. Deane*, 211 Ariz. 95, 97, ¶ 5 (App. 2005).

**¶18** There were three categories of RSUs obtained: first, 544 RSUs (pre-marriage); second, 3,799 RSUs that were obtained and vested during the marriage (community) and 1,348 RSUs that were obtained during the marriage but had not yet vested. The superior court found that none of the pre-marriage RSUs were Mother's separate property because they had not vested by the time the parties married. The court then found that 4,343 units, including the pre-marriage RSUs, became community property because they vested during the marriage. Finally, the court determined the remaining 1,348 RSUs that had not vested during the marriage, but were granted before the date of separation, should be divided by applying the *Nelson* formula.[1]

**¶19** Father argues that based on conflicting testimony, the superior court made sufficient findings to support its division of the RSUs. But the superior court found that the RSUs obtained, but not vested prior to marriage, were community property. Because the court failed to give Mother any separate property credit for the 544 RSUs she earned before she got married, the court's characterization of the RSUs is unsupported by the facts and the law.

**¶20** Mother additionally argues that the superior court "failed to issue any orders regarding future capital gains taxes on the RSUs." Citing *Koelsch v. Koelsch*, 148 Ariz. 176, 186 (1986), Father argues that future tax obligations are speculative and therefore not appropriate for the court to decide. But *Koelsch* addressed retirement accounts that would mature in the future, not RSUs. 148 Ariz. at 178–79. This case is more analogous to *Biddulph v. Biddulph*, 147 Ariz. 571 (App. 1985), where the parties argued over the allocation of stock and the tax implications. 147 Ariz. at 572–73 . There, the court held that "[c]osts which necessarily result from dividing the community estate in an otherwise equal manner should be borne equally by the parties. However, the spouse having ownership and control over an item of property should bear the risks associated with its future

---

[1] The *Nelson* formula is used when the benefit is used to entice future performance and is calculated as follows: "the numerator of the fraction is 'the number of months from the date of grant of each block of options to the date of the couple's separation, while the denominator [is] the period from the time of each grant to its date of exercisability.'" *Brebaugh*, 211 Ariz. at 100, ¶ 21 (alternation in original) (quoting *In re Marriage of Nelson*, 177 Cal. Rptr. 790, 793 (App. 1986)).

disposition." *Id*. at 573. Here, the court ordered the parties to "equally share the transfer expenses and cost of preparing whatever paperwork is required" for transfer of the RSUs but failed to address tax consequences that will result at the time of the transfer.

**¶21**         The superior court's allocation of the RSUs is vacated and the issue is remanded for the court to consider Mother's separate property interest in the RSUs and each party's share of the tax liability resulting from the transfer of the RSUs.

**IV.     The court did not err in its award of Mother's ESPP shares.**

**¶22**         Mother also alleges that the court erred by awarding 3,363 ESPP shares as community property because some of them were separate property. But Mother's own expert identified 3,289.5 or 6,700.6 of combined RSUs and ESPP shares as community property, based on alternative calculation methods. Father asserted, and his expert testified, that 3,363 ESPP shares "were all acquired during the marriage and paid for using community earnings." The court found that 3,363 shares were community property and awarded half to Father. This Court "defer[s] to the trial court's determination of witnesses' credibility and the weight to give conflicting evidence." *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998). This Court will not reweigh conflicting evidence or a trial court's credibility assessments on appeal. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019). The evidence supports the court's classification of the ESPP shares and the finding that they are community property.

**¶23**         Mother contends the superior court abused its discretion by failing to consider tax implications of the transfer of the ESPP shares. The court determined that because the ESPP shares were not subject to vesting at a later date, they were subject to immediate division and could be divided equitably without regard to formulas used for unvested benefits. But the court did not address the tax liability, if any, that would result at the time of this division and transfer. On remand, the court should address any such tax implications.

**V.      The court did not err in valuing and then dividing the Amway business.**

**¶24**         Mother contends the superior court abused its discretion by valuing the Amway business without having sufficient evidence. But Mother did not provide evidence to support her proposed valuation of the business. The court did not abuse its discretion by valuing the Amway business and dividing it based on the evidence presented. *See Reed v. Reed*,

82 Ariz. 168, 172 (1957) ("If appellant was dissatisfied with the state of the record, it was his duty to further enlighten the court.").

¶25        Mother also contends that the court erred in not finding a binding Rule 69 agreement regarding the Amway business. Father asserts there was never mutual assent and therefore the parties were unable to reach an agreement. "[This Court] view[s] the evidence in the light most favorable to sustaining the trial court's findings and will uphold them unless they are clearly erroneous or unsupported by the evidence." *In re Marriage of Priessman*, 228 Ariz. 336, 337, ¶ 2 (App. 2011) (quotation omitted). "No agreement or consent between parties or attorneys in any matter is binding if disputed, unless it is in writing, or made orally in open court, and entered in the minutes." *Murray v. Murray*, 239 Ariz. 174, 178, ¶ 13 (App. 2016) (quotation omitted). Mother did not establish the existence of a signed agreement, and the court did not err by finding no binding Rule 69 agreement.

## VI.    The findings of fact do not support the court's failure to award rent.

¶26        Mother asserts "that equity required the trial court here to either order Father to pay Mother one-half the home's rental value; or order to pay all home expenses during his exclusive use; or to otherwise more equitably balance the assets and debts."

¶27        In *In re Marriage of Pownall*, 197 Ariz. 577 (App. 2000), the husband paid the mortgage on the marital residence, which was his separate property, while the wife lived there alone, rent-free. 197 Ariz. at 582–83, ¶¶ 23–24. This Court remanded the case for a determination of the community's interest in the residence and directed the superior court to offset that interest by the rental value the wife received. *Id.* at 583, ¶ 24. Similarly, in *Ferrill v. Ferrill*, 253 Ariz. 393 (App. 2022), this Court concluded that the superior court could order an offset for wife's post-service possession if husband was ousted from the marital residence, and the case was remanded for findings as to whether ouster had occurred. 253 Ariz. at 396, 398, ¶¶ 9, 11, 19. This Court also determined that reimbursement, if warranted, could be "valued at up to one-half the reasonable rental value of the marital home." *Id.* at 398, ¶ 21.

¶28        Here, the house was owned mortgage-free by the community. The superior court only analyzed the separate contributions made by each party and determined them to be equitable. The court did not weigh the benefit Father received from living rent-free after the entry of the temporary

orders awarding him exclusive use of the residence. Nor did the court consider the converse detriment to Mother in having to pay for a new place to live over the same period. Accordingly, the superior court's ruling is vacated and remanded for the court to determine an appropriate offset for the value received by Father while in exclusive possession of the marital home.

## VII.   The court did not err by denying Mother's reimbursements.

¶29        Mother argues the court abused its discretion by not awarding her post-service payments of community debt paid with her separate funds.

¶30        The court heard testimony and took evidence from Mother and Father about expenses paid post-separation. The court then found that "both parties expended community funds to maintain the residence after their separation and prior to the date of [s]ervice" and that "Mother did not produce sufficient evidence to carry the burden of proof that she expended more funds than Father to maintain the property." The record supports the superior court's findings and it did not abuse its discretion. *See Goats v. A. J. Bayless Mkts., Inc.*, 14 Ariz. App. 166, 169–71 (1971).

## VIII.   Warning the parties of consequences for not using a parenting coordinator did not result in reversible error.

¶31        Mother argues the court abused its discretion by warning the parties that if one parent does not agree to use a parenting coordinator to assist with future communication, it may consider that refusal if there is a subsequent modification hearing. The court stated, "[p]ursuant to [Ariz. R. Fam. Law P.] 74, the [superior] [c]ourt does not have the ability to appoint a parenting coordinator for these parties, but the [c]ourt STRONGLY ENCOURAGES them to engage and use a parenting coordinator" and failure to do so "may be taken into consideration." Any argument regarding what a court may or may not do in the future if one of the parties does not agree to use a parenting coordinator is premature. *See Mills v. Ariz. Bd. of Tech. Registration*, 253 Ariz. 415, 423, ¶¶ 23–24 (2022) (courts restrain from resolving unripe issues to avoid issuing advisory opinions on hypothetical or abstract questions). Mother has not established reversible error.

## IX.   It was not an abuse of discretion for the court to restrict the parties' communication.

¶32        Mother argues the communication orders were too restrictive but acknowledges the court has authority to issue appropriate boundaries

regarding parental communications. Here, the court found "both parents are very quick to blame the other and neither accepts responsibility for their own role in this conflict." These findings support the court's order prohibiting the parties from using the words "always" or "never" in their email communications or the use of "absolute terms." *See* A.R.S. § 25-403.02(B), (C)(7) (court is required to adopt a parenting plan consistent with child's best interests and that provides for communication between the parties). The court did not abuse its discretion by encouraging parties to communicate about Child in a more productive way.

## X. The finding of no significant history of domestic violence was supported by the record.

¶33 Mother argues the superior court erred by concluding there was insufficient evidence to deviate from the presumption favoring joint legal decision making and by ordering joint legal decision making. Mother asserts the court did not adequately consider her testimony regarding numerous instances of domestic violence.

¶34 An order addressing legal decision making is reviewed for an abuse of discretion. *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019). If the court finds domestic violence has occurred, it must determine whether it constituted (1) "significant domestic violence pursuant to § 13-3601," or (2) "a significant history of domestic violence." A.R.S. § 25-403.03(A); *DeLuna*, 247 Ariz. at 423, ¶ 11. The Legislature did not define "significant domestic violence" or "significant history of domestic violence," leaving the superior court with "discretion to weigh the evidence and determine the degree of the domestic violence's 'significance' for the purpose of § 25-403.03(A)." *DeLuna*, 247 Ariz. at 424, ¶ 15. If the court finds neither "significant domestic violence" nor "a significant history of domestic violence," a rebuttable presumption against awarding joint legal decision making exists if the court finds an act of domestic violence occurred. A.R.S. § 25-403.03(D). To determine if a parent has rebutted the statutory presumption against joint legal decision making, the court is required to consider specified factors under § 25-403.03(E), such as completion of counseling programs or parenting classes.

¶35 Here, the court did not find "significant domestic violence" or a "significant history of domestic violence." The court found one domestic violence incident had occurred. But it also found that Father completed a domestic violence course and a parenting class, rebutting the statutory presumption that sole legal decision making was in Child's best interests.

A.R.S. § 25-403.03(D), (E). The court also found that Father had never engaged in any abuse or neglect of Child.

¶36        Mother contends the superior court ignored or failed to give credit to much of her evidence. But this Court will not reweigh the evidence and will affirm the superior court's ruling if it is supported by the record. *Lehn*, 246 Ariz. at 284, ¶ 20; *Pettit v. Pettit*, 218 Ariz. 529, 531, ¶ 4 (App. 2008). Here, the  superior court's ruling is supported by the record, and the court did not abuse its discretion.

## XI.        The court did not abuse its discretion in awarding fees.

¶37        Mother argues the court abused its discretion by awarding attorneys' fees to Father under § 25–324(A), which authorizes an award of fees after considering both parties' financial resources and the reasonableness of their positions throughout the proceedings. An award of attorneys' fees is reviewed for an abuse of discretion. *Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 6 (App. 2014).

¶38        Citing *Magee v. Magee*, 206 Ariz. 589, 592, ¶ 17 (App. 2004), the superior court considered several factors before awarding attorneys' fees including: the financial resources of each party, the financial disparity between the parties and the ratio of fees owed to the assets and income of each party. The court also considered the reasonableness of each party's positions. *See Myrick*, 235 Ariz. at 494, ¶ 9.

¶39        The court made specific findings as required by § 25-324 — that a financial disparity existed between the parties with Father earning significantly less than Mother and that some of Mother's expenses were exaggerated. Additionally, while the court found that both parties took unreasonable positions at times, it found some of Mother's positions were not supported by evidence. For example, Mother requested Dr. Branton refund the fees earned, claiming he violated court rules. She also hired an expert to rebut Dr. Branton's findings, even though both parties agreed to appoint Dr. Branton as the family evaluator. Also, the court found Mother failed to comply with discovery and disclosure rules.

¶40        The superior court did not abuse its discretion under § 25–324(A). Nevertheless, on remand, the court may revisit this issue to assess the reasonableness of the attorneys' fees award in light of its new rulings.

## CONCLUSION

¶41          For the foregoing reasons, this Court vacates in part and affirms in part. The case is remanded with directions to address the classification and award of RSUs and the determination of the rental value of the residence offset by Father's benefit. Both parties seek attorneys' fees and costs under § 25-324 and Arizona Rule of Civil Appellate Procedure 21. After considering the reasonableness of the positions each party has taken and their financial resources, this Court denies both requests.

